THE ATCHISON, TOPEKA & SANTA FE RAILWAY COM
PANY V. JAMES D. CONLON *et al.*

No. 15,394.    (94 Pac. 148.)

SYLLABUS BY THE COURT.

1. PRACTICE, SUPREME COURT—*Abstract of the Record—Counter-abstract.* Under rule 10*a* of this court the plaintiff in error may make the claim in his brief that a finding of fact returned by the jury is not supported by any evidence without being obliged to abstract the evidence to support the claim. In such case it devolves upon the defendant in error to abstract such portions of the evidence as he contends support the finding, and if he fail to do this the claim of the plaintiff in error will be taken as confessed.

2. ——— *Causes Determined upon Abstracts.* Causes are no longer to be determined in this court upon the records, but upon abstracts prepared in accordance with the provisions of rule 10*a*.

3. ——— *Preparation of Abstracts.* The subject of the preparation of abstracts discussed.

Error from Atchison district court; BENJAMIN F. HUDSON, judge. Opinion filed February 8, 1908. Reversed.

*William R. Smith, O. J. Wood,* and *Alfred A. Scott,* for plaintiff in error.

*Adams & Conlon,* for defendants in error.

The opinion of the court was delivered by

BURCH, J.: This is the second appearance of this case here. The general facts are stated in *Railway Co. v. Conlon,* 62 Kan. 416, 63 Pac. 432. The propositions there considered and decided were the right to a farm crossing by virtue of adverse user and possession and from the necessity of the case. Before the second trial the pleadings were amended and the defendants tendered a single new issue—that the crossing was taken into consideration by the condemnation commission in making the original award of damages for the railroad

right of way. At the second trial two questions were submitted to a jury. The court adopted the answers returned and made additional findings, so that the facts found are the following:

"(1) Ques. About August, 1864, did the Atchison & Pike's Peak Railroad Company, the grantor under condemnation proceedings of the plaintiff as to its right of way through the northeast quarter of section ten (10), township six (6), of range twenty (20), in Atchison county, Kansas, acquire by condemnation proceedings a right of way through the above-described land, then belonging to one J. W. Baldwin, the grantor of defendants' ancestors, subject to said Baldwin's right, and that of his grantees, to forever pass over the track of said railroad company at the point in question, with the assent of the said railway company, and did the commissioners appointed to award damages for the taking of the land comprising said right of way take such fact into consideration in assessing the amount of damages sustained by said Baldwin? Ans. Yes.

"(2) Q. Did said J. W. Baldwin go into possession of said right of way at the point in question under claim of right and ownership thereto and therein, and has he, and have his grantees and successors in interest thereto, openly, continuously, uninterruptedly, peaceably, exclusively and adversely to the claim of said Atchison & Pike's Peak Railroad Company and its successors, and to all others claiming any right, title or interest therein, held possession of, and used the same, from about August, 1864, to the present time, subject, however, to the paramount rights of the said Atchison & Pike's Peak Railroad Company, and those of the plaintiff? A. Yes.

"The court adopts the above findings of the jury, and in addition thereto finds as follows:

"(3) That at the time of the condemnation proceedings of the right of way of the Atchison & Pike's Peak Railroad Company (now succeeded by the Central Branch Union Pacific Railroad Company) over the northeast quarter of section number ten (10), township six (6), of range twenty (20), in Atchison county, Kansas, in 1864, and before, one James W. Baldwin was the fee simple owner thereof, and also of the east half of the southeast quarter of section number three

(3), township number six (6), of range number twenty (20), in said county, which two tracts of land lay together, comprising one farm, which farm, including all rights they had to use the private way over and across said right of way of the Atchison & Pike's Peak Railroad Company, said Baldwin and Melvina, his wife, sold and conveyed by deed of general warranty to James Conlon, defendants' ancestor, less twenty-two acres off the east side of said northeast quarter, and twenty acres off the north end of said east half of the southeast quarter, in 1870, being two hundred (200) acres, more or less. Said deed contained the statement that 'the right of way has been given to P. P. railroad company heretofore by said Baldwin.' June 19, 1872, said James Conlon, and Anna, his wife, conveyed by deed of general warranty the same tract of two hundred (200) acres, including their right to cross said right of way at the point in question, to William Bowen, which deed contained the statement that 'the right of way has been given to P. P. railroad company.' July 26, 1872, said William Bowen, widower, by a similar conveyance deeded it back to said Anna Conlon, including his right to cross said right of way at the point in question. Since the Conlons bought said farm in 1870 it has remained in the same compact form to the present time, devoted to agricultural purposes and the dairy business.

"(4) That across said farm a public highway, known as the 'Monrovia road,' runs, and has run since before 1864, in a westerly direction, and north of the highway about one hundred (100) feet, and nearly parallel thereto, runs the plaintiff's railroad track, and north of that the Central Branch Union Pacific Railroad track, and still further north the railroad track of the Missouri Pacific Railroad Company; all of said tracks being nearly parallel to each other.

"The dwelling-house, barns and other outbuildings on said farm are located north of all said railroad tracks, and about seven hundred (700) feet north of said public highway. The said public highway divides said farm into two nearly equal parts, about one hundred acres north, and about one hundred acres south, thereof. The private way in question runs near the west line of said farm and nearly due north from the said public highway, which runs through the south half of said farm, to the said dwelling-house and other

buildings located on the north half thereof, and crosses all of said railroad tracks.

"(5) That after said condemnation proceedings, in 1864, and after the Atchison & Pike's Peak Railroad Company had laid its tracks across said farm, there was no way of reaching said public highway or any public highway, or the south half of said farm, with teams, wagons and other vehicles, farm implements, cattle and the like, used in operating said farm, except over and along said private way. Said way was established before 1864, and has remained in the same place ever since, and has been used by said Baldwin and the said Conlons continuously and many times a day in operating and carrying on said farm since the first railroad track was laid across it.

"(6) That after the plaintiff fenced its right of way it placed a gate therein upon said private way, with the assent of the defendants, who made use of the gate in place of one some feet south thereof which had formerly been used to control their private way. No cattle, horses or other animals ever came upon the plaintiff's track by or on account of said gate having been left open and unguarded, and no animals were ever killed or injured by reason of having strayed upon the track of plaintiff because said gate had been left open and unguarded when not in use. Once while defendant was driving his cows from the pasture in the south half of said farm to the barn a number of them were killed by plaintiff's train at the point in question. But upon the matter being litigated in the courts, it was determined that such killing was the result of plaintiff's negligence.

"(7) That the use of said private way at the point in dispute does not necessarily interfere with the efficient operation of plaintiff's trains over its said railroad."

Judgment was rendered for the defendants, and the plaintiff prosecutes error.

The plaintiff abstracts the pleadings, the instructions which it asked, the instructions given to the jury, and the findings of fact. The evidence is not abstracted, except as hereafter stated. Error is assigned in that the court refused to set aside the findings of the jury (findings numbered 1 and 2).

In the brief the assertion is made that the facts em-

braced in finding No. 2 are unsupported by any evidence. In opposition to this claim the defendants present no counter-abstract of evidence. Rule 10a of this court reads, in part, as follows:

"A party need not include in his abstract all the evidence in order to support a claim on his part that it does not show or tend to show a certain fact, but when such a question is presented the adverse party shall print so much of the evidence as he claims to have that effect."

The plaintiff has evidently prepared its abstract in strict accordance with this rule. The jury found the specific fact of adverse user. The court adopted the finding, instead of setting it aside. The plaintiff claims it is unsupported by any evidence. Therefore the defendants should have abstracted such portions of the evidence as they claim support the finding. Having failed to do this, the plaintiff's claim will be taken as confessed.

The reason for the rule quoted is obvious, and reaches backward to the reason for the statute which authorizes the court to require printed abstracts. (Gen. Stat. 1901, § 5021.) Under the former practice the seven justices had before them for reference in the decision of causes only the original record and one copy. It was impossible that each justice should give to the record in each case the consideration which it deserved without having the material portions immediately accessible for his personal use. Besides this, hours of time that should have been devoted to the consideration of errors assigned were needlessly consumed in the laborious task of searching the record. Both of these serious impediments to the prompt and efficient decision of causes may be overcome by the preparation of proper abstracts and the printing of copies for all the members of the court.

Some of the general rules for the preparation of abstracts are stated in volume 3 of the Cyclopedia of Law and Procedure, at page 78:

"With regard to the matters properly included in an

abstract of record it may be stated, as a general rule, that such abstract should be literally an abstract, or abridgment, of the record, containing only so much thereof as is necessary to a full understanding of the questions presented for review. It should be as brief as possible so long as all material matters are presented, and an abstract which does not comply with this rule to a sufficient extent to obviate the necessity of a resort to the record is insufficient. Whatever is relied upon as error should be shown, and an appellant's abstract will, as against him, be deemed sufficiently full and accurate to present all of the errors on which he relies. The abstract should not, however, contain matters wholly immaterial and unnecessary in aiding the reviewing court to determine the appeal."

Rule 10a is framed generally in accordance with these principles. Whenever the claim is made, as in this case, that the record contains no evidence showing or tending to show a particular fact, manifestly the theory of an abstract would be broken down if the party making the claim were obliged to print the evidence entire to show that it is well founded. In order that there may be an abstract there must be abridgment, and the court ought not to be compelled to read an unabridged record to ascertain the truth of a negative proposition of this character. The evidence upon which the opposing party relies will be familiar to him, and more than likely may be condensed into a few sentences or paragraphs, or at least into a few pages. It is but a slight burden upon him to print it; the court should have it gathered together and segregated from the rest of the evidence and should be obliged to read no more.

It will be observed that the portion of the rule quoted speaks of "a certain fact." Its application is obvious where it is claimed, for example, that evidence of a demand or of a notice is wanting. If, however, the general claim be made that a verdict or decision is unsupported by the evidence, and a consideration of the evidence is necessary to determine the question, the evidence must be abstracted by the party making

the claim.    For example, an appellant in a criminal case cannot throw upon the state the burden of abstracting the evidence by asserting there is no evidence tending to prove guilt.    If a defendant against whom a judgment has been rendered in a personal-injury case should say there is no evidence to show negligence on his part he should abstract those portions of the evidence directed to that point.    If he should say there is no evidence to show that he had any knowledge of the defect in the place or the appliance causing the injury he may stand upon the assertion, and the adverse party should abstract such portions of the evidence as he contends show knowledge.    If in consequence of a demurrer to the evidence or a motion for a peremptory instruction it be necessary to consider the evidence generally in order to determine its legal sufficiency, the party asserting its insufficiency must abstract it.    But if the claimed defect lie in the failure to prove some certain fact essential to recovery the application of the rule made in the present controversy will govern.

In respect to the first finding of fact the plaintiff does not say in set phrase that it is unsupported by the evidence, but goes a step further, states that the evidence given upon the disputed matter embraced in the finding is contrary to the finding, and gives a recital of the evidence upon the point.

The rule contemplates that the abstract shall be complete in itself.    All portions of the record which require consideration as bearing upon the errors assigned should appear in the abstract; and in preparing the abstract the court prefers that the chronological order of the events in the case should be followed.    If counsel deem it advisable for the purpose of strengthening or elucidating the argument in the brief to quote from the abstract there can be no objection, but portions of the matter which should appear in the abstract should not be reserved for the brief merely to avoid duplication.    Since the adoption of the new rule many attorneys have conceived that it may be complied with

Railway Co. v. Conlon.

in spirit by printing somewhere in the brief or in the abstract the essentials of the record. The court has been disposed to be lenient in the matter while those members of the bar who are without previous experience in the preparation of abstracts are familiarizing themselves with the practice. Following the suggestions here made a due observance of the proper form will be expected.

The claim that a certain fact is not supported by evidence should be plainly made in the appropriate subdivision of the brief and not casually or incidentally in connection with a running discussion. Neither opposing counsel nor the court should be left in any uncertainty respecting the position taken.

In the present case, although the foregoing suggestions relating to form have not been anticipated, the plaintiff has made its claim entirely clear. The summary of the evidence given was evidently intended to be regarded as a part of the statement of the plaintiff's contention, and the defendants were fairly challenged to show evidence to support the finding. The defendants merely repeat several times that there is evidence in the record to support the finding. If so they should have exhibited it by a counter-abstract. Under the circumstances the court regards the evidence narrated in the plaintiff's brief as all there is to sustain finding No. 1, and it is insufficient for that purpose.

Without reference to any matter connected with the presentation of the present controversy, it may be remarked that it is the purpose of the court to decide causes upon abstracts and not upon records.

The court trusts the bar to aid it in the correct determination of causes presented for decision. This aid will not be supplied if the preparation of abstracts and counter-abstracts degenerates into a contest over how much can be suppressed or concealed. The rule opens no new field where sharp practice may be indulged. It should be the aim of every attorney for a plaintiff in

error to make his abstract complete and correct as an abstract. If the question relate to the qualification of a juror or the competency of a witness a single answer or a few answers may apparently show disqualification or incompetency, when other answers clearly show the contrary. The cross-examination of a witness may modify statements in the direct examination. Evidence may qualify other evidence, and innumerable instances might be cited in which opportunity is afforded to make a *prima facie* showing in the original abstract which would mislead the court if not corrected by a counter-abstract. The attention of the court is distracted, its grasp of the question under consideration is weakened and its labor is greatly increased by the constant turning from abstract to counter-abstract. It is not fair to opposing counsel to oblige them to piece out the abstract; and if opposing counsel should neglect to prepare a sufficient counter-abstract, and the court should be overreached and led to a wrong decision because of an abstract fair in form but false in fact, the case might call for discipline. The language of the rule is plain and positive:

"The plaintiff in error or appellant shall prepare a printed abstract of the record, which shall reproduce such portions thereof as it is necessary to read in order to arrive at a full understanding of the questions presented for review." (Rule 10*a*.)

Abstracts should be entitled in the cause, and should show, after the title, on whose behalf they are made. The introductory and connecting statements common to cases-made may be employed. Abstracts and counter-abstracts should conclude with the following statement: "The foregoing is a true and correct abstract of the record in the above-entitled cause." This statement should be signed individually by the attorneys preparing the abstract. Firm names are not permissible. (Rule 8.)

What has been said respecting the completeness of abstracts does not imply any modification of those parts

Railway Co. v. Conlon.

of the rule respecting abridgment, condensation and the elimination of everything except matters of substance. Only that which is material should appear, and prolixity may render an abstract vulnerable to a motion to strike from the files. The lawyer who has not overcome the habit, once quite prevalent, of inserting in the case-made the precipe for summons and bond for costs, when the only question to be considered was whether special findings were conflicting, should carefully study the rule before attempting to prepare an abstract. Frequently consultation between the attorneys for the respective parties may be possible and may result in producing the luminous but compendious brevity which should characterize an abstract. The court would be glad if the counter-abstract might soon disappear from its files.

Recurring to the case under consideration, the law announced in the former opinion precludes the right to a crossing from the necessity of the defendants' situation disclosed by the findings of fact.

If upon another trial it should appear that the defendants have a right to a crossing it does not follow that they have the unrestricted right to leave the crossing gates open. It is their duty to keep the gates closed when not in actual use. (*Adams v. A. T. & S. F. Rld. Co.*, 46 Kan. 161, 26 Pac. 439.) For the protection of life and property which would otherwise be endangered the court should provide for the enforcement of this duty.

The judgment of the district court is reversed and the cause is remanded for a new trial.