No. 28,209.

GEORGE A. PLATTS, *Appellee* and *Cross Appellant,* v. ERLE W. THOMPSON, *Appellant* and *Cross Appellee.*

(268 Pac. 833.)

Opinion filed July 7, 1928.

*Robert C. Foulston, A. M. Ebright, Allen B. Burch* and *J. B. Patterson,* all of Wichita, for the appellant and cross appellee.

*Chester I. Long, J. D. Houston, Austin M. Cowan, Claude I. Depew, J. G. Norton* and *W. E. Stanley,* all of Wichita, for the appellee and cross appellant.

The opinion of the court was delivered by

DAWSON, J.: This was an action to recover a commission on the sale of a half interest in a large tract of land in Florida, and also for a commission for the service of procuring a sales-agency contract on the remaining half interest in the same property.

It appears that the defendant, Erle W. Thompson, was a dealer in lands and owner of vast tracts of real estate in Florida and elsewhere. Plaintiff was a real-estate agent, and in the last few years had negotiated several sales of land for plaintiff. His commission was $1 per acre on all such sales.

In 1923 defendant owned a tract of 18,000 acres of unimproved land near Melbourne, Fla., subject to a mortgage for $77,000, and he engaged the services of plaintiff to effect a sale of that property or to obtain a sales-agency contract for its disposal. A sales-agency contract, according to the record, is a contract between the owner of a large tract of land and a real-estate dealer whereby the latter undertakes to subdivide the land into small parcels and sell them to settlers at a sharp advance over the *pro rata* price of the entire acreage named by the owner.

Plaintiff first attempted to dispose of the property to a sales-agency firm in Oklahoma named Parrish, Harrell and Keys. That contract of employment read:

"NOVEMBER 20, 1923.

"George A. Platts is to receive from me a commission of $1 per acre on lands sold under option to Parrish & Harrell and Dennis B. Keys as such lands are paid for by them, and such commissions are to bear 6 per cent interest from this day when earned and paid. The lands optioned in Brevard county, Florida, total 17,527 acres, but the commission is to be paid only when land is actually purchased and paid for. When I receive any cash payment on such lands Platts is to receive his proportionate share of the commission on the same.

"E. W. THOMPSON.

"Accepted by me this date.—GEO. A. PLATTS."

This Oklahoma deal failed, but plaintiff got on the track of another with C. L. Davidson and Lock Davidson of Wichita; and it was orally agreed between plaintiff and defendant that if plaintiff effected a deal with the Davidsons his commission would be the same as that defined in the written contract of November 20, 1923, when the Oklahoma deal was in contemplation. The Davidsons

owned a cattle ranch in New Mexico covered by a mortgage of $125,000, and a herd of live stock covered by a mortgage of $80,000, which they were willing to trade for defendant's tract of 18,000 acres near Melbourne, Fla., but the incumbrances on the New Mexico ranch and live stock made complications not easily surmounted. Eventually, however, a plan was devised whereby defendant was to mortgage his Florida land for an additional $125,000 and loan this sum to the Davidsons to reduce the indebtedness on their New Mexico ranch and live stock, and the Davidsons were then to trade the ranch for a half interest in the Florida land burdened by two mortgages aggregating $202,000. By advice of counsel and for the better protection of defendant's interests, the title of the Davidsons in the New Mexico ranch was vested in a corporation created for that purpose, and the 18,000-acre tract of Florida land was similarly vested in a corporation, and the entire capital stock of the New Mexico corporation was transferred to defendant by the Davidsons, and defendant transferred to the Davidsons one-half the stock in the Florida corporation. Following this exchange of interests in the New Mexico and Florida lands, or contemporaneous therewith, the Davidsons agreed to undertake the subdivision and marketing of the entire tract under a sales-agency contract.

When these complicated transactions were effected, plaintiff called on defendant for his commissions, and after a good deal of delay and some rather testy correspondence a settlement was agreed upon by which defendant was to convey to plaintiff 20 acres of land near Wichita and 480 acres of Finney county land in full settlement of plaintiff's commission, and plaintiff was to convey a small tract of Florida land clear of incumbrances, and defendant was to arrange for a loan on these Kansas lands to raise the money to enable plaintiff to pay off the incumbrances on the Florida tract included in this settlement.

This settlement was not carried into effect. Plaintiff charges that it was breached by defendant, and brought this suit for his commissions on the sale of a half interest in the 18,000 acres to the Davidsons, and for obtaining the sales-agency contract between defendant and the Davidsons for the disposal of defendant's remainder interest in that property.

Defendant answered admitting the employment of plaintiff on a specified commission of $1 per acre for whatever of plaintiff's

Florida lands defendant should find a buyer, such commission to be due and payable when the land was actually sold and paid for. Defendant pleaded a somewhat different version of his transaction with the Davidsons than that alleged by plaintiff, or as outlined above, but virtually admitting that plaintiff had earned certain commissions in defendant's service for which he had not been paid.

Answering further, defendant alleged that—

"There arose a dispute between said plaintiff and defendant as to the amount of the commissions, if any, to which said plaintiff was entitled to receive, and that after a full and complete discussion of said matter said plaintiff and said defendant did, on the 8th day of August, 1925, agree to and with the said plaintiff, in full compromise, adjustment and settlement of the claims of said plaintiff for commissions growing out of the alleged sale of the said Florida lands, . . . which is in words and figures as follows, to wit:

" 'E. W. T. conveys 20 acres Wichita clear and 480 Finney Co. clear
" 'For
" 'Full settlement Platts acct. with E. W. T. Davidson deal; also Platts convey clear of incumbrance 117 x 600 feet North of Melbourne Riverside drive.
" 'E. W. T. will arrange within 90 days loan for $5,000 on Kans. lands; out of this amt Platts is to pay off mortg on Melbourne and repay any advances made him by E. W. T.

" '(Signed)   E. W. T.
" '(Signed)   G. A. P.
" '8/8/25.' "

Defendant alleged that he had always been and still was ready to carry out that agreement, but that plaintiff had repudiated it. Defendant prayed judgment for costs.

Plaintiff's reply denied that the contract of settlement was breached by him, and alleged that it had been repudiated by defendant, and that plaintiff had merely acquiesced in such repudiation and stood on his rights under his contract of employment.

At the trial, over plaintiff's objection, defendant was permitted to introduce testimony tending to show that the 480 acres of Finney county land was to be conveyed in full settlement of all of plaintiff's claims for commissions, and that the exchange of plaintiff's small tract of Florida land for defendant's 20 acres near Wichita was a separate and unrelated transaction which the parties agreed to after the plaintiff's claims for commissions had been settled.

In the course of the trial, plaintiff testified that on a certain occasion defendant met plaintiff on a street in Wichita, at which time defendant—

"Stated to me that he would protect me in the sum of $9,000 on the Davidson deal. I made no reply to it. That was not satisfactory to me.

Mr. Thompson had finished the deal at that time. I was walking down the street in a hurry, and I made no reply. I didn't consent."

An item of $1,000 paid by defendant to plaintiff on account was not disputed.

The jury returned a general verdict for plaintiff for $9,000 less $1,000 advanced by defendant. Special findings were also returned by the jury, to some of which space must be given:

"4. Q. Did defendant Thompson secure a sales-agency contract for the sale of the Florida lands in question with the Davidsons? A. Yes.

"5. Q. Did the securing of said agency contract result from the services of the plaintiff performed for the defendant in pursuance of any agreement between plaintiff and defendant? A. No. . . .

"8. Q. Did the transaction between Thompson and the Davidsons, whatever you may find that to be, result either in Thompson disposing of approximately 18,000 acres of Florida lands in question, or obtaining a sales-agency arrangement thereon, or both? A. Both. . . .

"10. Q. Did Platts and Thompson agree upon a basis of commission of $1 per acre, payable when and if E. W. Thompson received the actual consideration for said transaction, . . . ? A. Yes. . . .

"13. Q. Did the plaintiff and defendant agree that for whatever services the plaintiff rendered in connection with the Davidson deal that the plaintiff should receive the sum of $1 per acre upon 9,000 acres of land? A. Yes.

"13 A. Q. If you answer question No. 13 in the affirmative, then state whether said commission of $9,000 was to be payable when Thompson received payment for the land? A. Yes. . . .

"15. Q. Did the plaintiff and defendant agree when in Palm Beach, Fla., that in full consideration and settlement of all claims for commission on the Davidson deal, the plaintiff would receive and the defendant convey three quarter sections of land located in Finney county, Kansas? A. Yes.

"16. Q. Has the defendant at all times been able, ready and willing to convey the said three quarter sections of land in Finney county, Kansas, to the plaintiff? A. Yes.

"17. Q. Do you find from the evidence that the plaintiff, George A. Platts, was the proximate and procuring cause of the transaction between the defendant and the Davidsons relative to the Melbourne, Fla., land? A. Yes.

"18. Q. Do you find from the evidence that, at the time of the so-called Davidson deal, there was an agreement between the plaintiff and defendant that the plaintiff's commission in said matter would be $1 per acre for the land actually sold or land covered by sales-agency contract, payable only when and if the defendant received the consideration therefor? A. Yes."

Defendant moved to set aside the general verdict and for judgment in his behalf on the special findings of the jury.

Plaintiff moved to set aside findings 5, 13, 13A and 15 on the ground that they were not supported by any competent evidence and were contrary to the evidence. Plaintiff also moved for judgment

in his behalf for $18,000 and interest based on the undisputed evidence and the findings other than those attacked in his motion to set aside.

All these motions were overruled. An item of $23.40 concededly due plaintiff and interest was added to the judgment, the credit of $1,000 due defendant was deducted, and judgment was entered in the sum of $9,387.38 in plaintiff's favor.

Both parties appeal.

Defendant's contentions are that the special findings do not accord with the general verdict and therefore supersede it, that the special findings are well sustained by the evidence, and that his motion for judgment on the special findings should have been sustained.

Plaintiff objects to some of these findings, particularly 5, 13, 13A and 15, on various grounds; that finding 5 was contrary to all the evidence and at variance with the general tenor of the other pertinent findings, and especially with specific finding No. 8; that findings 13 and 13A were induced by an erroneous instruction of the trial court touching the effect of certain immaterial testimony, and in disregard of the memorandum settlement of August 8, 1925; and that findings 15 and 16 are based upon the same misconception of that contract of settlement.

With such divergent contentions to consider, it will facilitate their disposition to inquire first whether the challenged special findings of the jury should stand.

This court has repeatedly held that where a claim is fairly made that a verdict or special finding is without support in the evidence it is incumbent on the adverse party to cite or quote from the record the evidence relied on to uphold it, and that burden is not sustained by the mere assurance of opposing counsel that there was such testimony but that it is unnecessary to abstract or produce it for our review. (*Railway Co. v. Conlon,* 77 Kan. 324, 329, 94 Pac. 148; *Bank v. Price,* 79 Kan. 283, 285, 98 Pac. 222; *State v. Nichols,* 117 Kan. 630, 632, 633, 232 Pac. 1058.) The testimony, of which there was abundance, and all to one effect and with none to the contrary, was that plaintiff was the procuring cause of the business engagements entered into between defendant and the Davidsons touching the 18,000-acre tract of Florida land, not only in that part of the deal whereby a half interest in that tract, through incorporation and transfer of stock ownership, passed to the Davidsons, but also in the matter of the sales-agency contract entered into between de-

fendant and the Davidsons for the disposition of the entire tract, which necessarily included defendant's remaining half interest therein. And such is the specific finding of the jury No. 8:

"8. Q. Did the transaction between Thompson and the Davidsons, whatever you may find that to be, result either in Thompson disposing of approximately 18,000 acres of Florida lands in question, or obtaining a sales agency arrangement thereon, or both? A. Both."

Finding No. 17 is to the same effect; and plaintiff's motion that finding No. 5 be set aside should have been sustained.

Findings Nos. 13 and 13A were manifestly founded on the immaterial testimony that at a chance meeting on a Wichita street defendant said to plaintiff that he would protect him to the extent of $9,000 on his deal with the Davidsons. Defendant could not manufacture evidence in his own behalf by a chance remark of that sort. Plaintiff was under no duty to have a fuss with defendant on the street to avoid the implication that by silence he was giving his assent to such amount as a complete settlement of what was due him. (*Leach & Co. v. Peirson,* 271 U. S. 520.)

The trial court's instruction No. 20, which manifestly pertained to this inconsequential street remark was erroneous and undoubtedly induced the jury to limit its verdict in plaintiff's favor to $9,000.

Touching plaintiff's objection to finding No. 15, it is hornbook law that the interpretation of a written instrument is a judicial and not a jury question, and this court is constrained to hold that the memorandum contract of settlement dated August 8, 1925, was not susceptible of the interpretation sought to be given to it by defendant and which he induced the trial court and jury to adopt. That contract plainly says that defendant agrees to convey the 20 acres near Wichita and the 480 acres of Finney county land in full settlement in the Davidson deal and the Melbourne Riverside property. On these main features of the contract there is no obscurity, no ambiguity, and parol testimony should not have been received to distort those terms into *two* agreements, one that the Finney county land should be in full satisfaction of plaintiff's commissions and the other a memorandum of an exchange of the 20 acres for plaintiff's Florida tract. Of course parol evidence might be given to explain that the initials of the signatories were those of the litigants, that the "20 acres Wichita" was the only 20 acres defendant owned thereabout, that the "480 acres Finney" was the only land he had in that county, and

similarly to define plaintiff's Florida tract; but none of these matters was in dispute. And on the minor point of plaintiff that the 90 days' time should have been written 30 days' time, that, too, was of no consequence since the court was not asked to change the contract to conform to the intention of the parties. It is therefore correct that finding No. 15 should also have been set aside. Plaintiff also objected to finding No. 6 relating to the fair value of plaintiff's services, but we do not regard it as of any consequence. The fallacious interpretation of the contract of settlement insisted on by defendant, and his refusal to comply with its terms, amounted to a repudiation of that contract and restored to plaintiff his rights under his contract of employment.

It follows that defendant was not entitled to judgment on the special findings.

With findings Nos. 5, 13, 13A and 15 set aside, what effect does that have on the matters raised in plaintiff's cross appeal? According to findings Nos. 8 and 17, plaintiff was the procuring cause of the *sale* of a half interest in the 18,000 to the Davidsons *and* of *obtaining a sales-agency contract* with the Davidsons for the disposition of the other half of the same tract. The jury expressly said that plaintiff accomplished both of these undertakings. At the agreed commission of $1 per acre, plaintiff was entitled to $9,000 on the sale of the half interest, less the $1,000 advancement. At the agreed commission plaintiff was and continues to be entitled to $1 per acre for whatever land is disposed of under the Davidson sales-agency contract until he receives $9,000 more. Plaintiff advocates a theory, which the court cannot follow, that the entire balance of his commission is already due. By the plain terms of the Oklahoma contract set out above, and which was orally adopted as the terms of his employment in effecting a sales-agency contract with the Davidsons, he was only to receive his proportionate share of commission thereon as fast as the land was sold. Up to the time of the trial, however, the Davidsons had sold an aggregate of 2,910 acres under their sales agency, consequently the substantial sum of $1,455 was due plaintiff, and judgment in his behalf for that amount should have been added to the amount accorded him on the sale of the first half interest in the property. (*Mitchell v. Derby Oil Co.*, 117 Kan. 520, 531-534, 232 Pac. 224.) And the terms of the judgment should also have adjudicated and upheld plaintiff's right to the balance of

his commission, and should have provided for an accounting thereof as it may fall due hereafter on the further disposition of the.Florida lands under the Davidsons' sales-agency contract, and thus put an end to further litigation on this subject. (Civ. Code, § 581; R. S. 60-3317.)

The cause will be remanded to the district court for modification of its judgment in accordance with the views outlined herein.