In re Larry Charles METTLEN, and Verna Lou Mettlen, Debtors.

**FARMERS NATIONAL BANK OF OSBORNE,** Movant/Plaintiff,

v.

**Larry C. METTLEN and Verna Mettlen,** Debtors/Defendants.

No. 93–4056–DES.
Bankruptcy No. 91–40410–12.

United States District Court, D. Kansas.

Nov. 4, 1994.

Lynn D. Lauver, Topeka, KS, for Larry Charles Mettlen and Verna Lou Mettlen.

Patricia A. Reeder, ·Woner, Glenn, Reeder, Lowry & Girard, Topeka, KS, for Farmers Nat. Bank of Osborne.

Eric C. Rajala, Trustee, Overland Park, KS.

## MEMORANDUM AND ORDER

SAFFELS, District Judge.

## I.  INTRODUCTION

This matter is before the court on debtors' appeal from an order of the bankruptcy court. On December 24, 1992, Farmers National Bank of Osborne ("Farmers") moved to set aside a compromise and settlement agreement it had entered into with debtors. On February 3, 1993, the bankruptcy court held a hearing on Farmers' motion and on February 19, 1993, entered an order setting aside the compromise and settlement agreement and granting Farmers relief from the automatic stay. Debtors appeal from the February 19, 1993 order.

## II.  BACKGROUND

Debtors filed a Chapter 12 bankruptcy on February 12, 1991. At that time, debtors owed Farmers in excess of $241,000. The debt was secured by liens on farm equipment and a real estate mortgage.

In January of 1992, the parties entered into a compromise and settlement agreement. The agreement required debtors to make either a $100,000 cash lump sum payment or an $80,000 cash lump sum payment and turnover secured equipment worth approximately $20,000. Debtors chose the latter option. According to the terms of the agreement, payment was due "promptly" upon court approval. The bankruptcy court approved the agreement in February of 1992. As of February 3, 1993, debtors had turned over the equipment but not paid the $80,000.

## III.  DISCUSSION

Title 28 United States Code Section 158(a) grants the court jurisdiction to hear appeals from final, and, with leave, interlocutory, orders of the bankruptcy court. The concept of "finality" is somewhat limited in the bankruptcy context. In a bankruptcy case, the appropriate "judicial unit" is not the overall case, but the particular adversary proceeding, or discrete controversy, within the overall framework of the debtors' petition. *In re Durability, Inc.,* 893 F.2d 264, 266 (10th Cir.1990). In the instant case, the challenged order lifted the stay and rescinded the parties' compromise and settlement agreement. The bankruptcy court's order is final and 28 U.S.C. § 158(a) confers jurisdiction over debtors' appeal. *See In re Stacy,* 167 B.R. 243, 246 (N.D.Ala.1994) (discussing finality of an order lifting stay); *In re Gianakas,* 112 B.R. 737, 740 (W.D.Pa.1990), *aff'd,* 917 F.2d 759 (3rd Cir.1990) (stating that an order granting or denying relief from stay is final); *In re Drislor Associates,* 110 B.R. 937, 938 (D.Colo.1990) (holding that an· order granting relief from stay is final).

Since the bankruptcy court's order determined an issue of law on largely undisputed facts, review is de novo. *See, e.g., Virginia Beach Federal Savings and Loan Ass'n v. Wood,* 901 F.2d 849, 851 (10th Cir. 1990).

The question presented on appeal is whether the bankruptcy court properly rescinded the compromise and settlement

agreement. At the hearing on its motions to lift stay and rescind the settlement agreement, Farmers argued that Kansas law allows rescission in three circumstances: (1) where the agreement is tainted by fraud; (2) where the agreement is the product of mutual mistake; and (3) where the debtor breaches an essential element, amounting to a refusal to perform, and the creditor elects rescission rather than damages. Farmers urged all three circumstances as bases for rescission. Debtors introduced evidence regarding their good faith.

After examining the record, and giving special attention to the transcript from the hearing, it seems clear that Farmers' arguments regarding fraud and mutual mistake were merely makeweights and the bankruptcy court did not base its decision on either theory.[1] Instead, it appears that the bankruptcy court based its decision on the delay in payment and "bankruptcy law."

### A. Rescission of the Settlement Agreement: Kansas Law

■ Kansas law favors compromise and settlement of disputes and, generally, in the absence of bad faith or fraud, neither party is permitted to repudiate a settlement agreement. *Matter of Estates of Thompson*, 226 Kan. 437, 601 P.2d 1105, 1108 (1979); *Fieser v. Stinnett*, 212 Kan. 26, 509 P.2d 1156, 1161 (1973); *Rymph v. Derby Oil Co.*, 211 Kan. 414, 507 P.2d 308, 312 (1973). The bankrupt-

cy court made no finding of bad faith or fraud. Indeed, Bankruptcy Judge John T. Flannagan clearly indicated he was not deciding the case based upon the parties' relative culpability. Transcript of the February 3, 1994, hearing, filed May 13, 1993, at p. 89.

■ Kansas law recognizes an exception to the general rule and allows a settlement agreement to be rescinded where it is tainted by mutual mistake. *Matter of Estates of Thompson*, 601 P.2d at 1108; *Fieser*, 509 P.2d at 1161 (quoting 15 Am.Jur.2d, Compromise and Settlement, § 34). However, the bankruptcy court made no finding of mutual mistake. Farmers' efforts to tailor such a finding from the record on appeal are unavailing.

Insofar as it based its decision on Kansas law, the bankruptcy court seems to have relied solely on Farmers' third argument— that is, the agreement should be rescinded because debtors' failure to pay Farmers the $80,000 "promptly" was a breach of an essential element, amounting to a refusal to perform, and allowed Farmers to elect to rescind rather than seek damages.[2] Debtors do not dispute that the agreement required them to pay the $80,000 "promptly" upon court approval, that payment of the $80,000 was an essential element of the agreement, or that they breached the agreement by not paying the $80,000. Stipulations, filed February 3, 1993, (Doc.1993), at pp. 1–2. In-

---

1. Patricia A. Reeder, Farmers' counsel, prepared the order setting aside the settlement agreement and granting Farmers relief from the stay. Paragraph five states that "[b]ased upon the grounds set forth by FNB in its briefs and in oral argument, upon state law and upon bankruptcy law, the compromise and settlement should be set aside and rescinded." Although by its terms the bankruptcy court's order is based upon the general reasons set forth in paragraph five, the court finds instructive the statements made by Bankruptcy Judge John T. Flannagan at the February 3, 1993, hearing. These statements, especially as they relate to debtors' failure to pay Farmers "promptly," are particularly instructive when taken with paragraphs two and three of the order, which relate to debtors' delay in paying the promised $80,000.

2. In support of its argument, Farmers cites to 15A C.J.S., *Compromise & Settlement*, § 46 and all the cases included under footnote 89. Section 46 provides as follows: "[w]here a breach goes to an essential element of the contract, and

in effect amounts to a refusal to perform or an abandonment, the other party may elect to regard the contract of compromise as rescinded and proceed on the original cause of action, or may sue on the compromise agreement for the breach."

One Kansas case appears under footnote 89 of § 46: *Platts v. Thompson*, 126 Kan. 544, 268 P. 833 (1928). In *Platts*, plaintiff and defendant disputed defendant's obligations under an employment contract. They settled the dispute by entering into another agreement. After defendant failed to perform under the terms of the settlement agreement, plaintiff sued under the original employment contract. The Kansas Supreme Court wrote as follows: "[t]he fallacious interpretation of the contract insisted on by defendant, and his refusal to comply with its terms, amounted to a repudiation of that contract, and restored to plaintiff his rights under his contract of employment." *Platts*, 268 P. at 836.

stead, debtors argue that it was improper for the bankruptcy court to grant rescission because their breach did not amount to a refusal to perform and, even if it did, they have not been, and cannot be, restored to the *status quo ante.*

The court's review is frustrated by the general nature of the order granting rescission. However, Judge Flannagan's statements at the hearing make clear his belief that debtors' delay was a breach of their contractual obligation to pay Farmers "promptly." It also is clear that debtors, although failing to perform the greater part of their obligations under the agreement (to pay Farmers $80,000), did partially fulfill their obligations by surrendering the farm equipment.

The critical element of Farmers' argument is that debtors' delay amounted to a refusal to perform. The bankruptcy court made no such finding. Instead, the bankruptcy court seems to have found merely that the delay constituted a breach of debtors' contractual obligation to perform "promptly." The bankruptcy court's decision to grant rescission flows directly from its finding that debtors breached a term of the agreement and not from a finding that the delay amounts to some form of constructive repudiation by debtors.

■ Under Kansas law, parties "may make contracts on their own terms, provided they are neither illegal nor contrary to public policy, and that in the absence of fraud, mistake, or duress a party who has fairly and voluntarily entered into such a contract is bound." *Adams v. John Deere Co.,* 13 Kan. App.2d 489, 774 P.2d 355, 357 (1989) (citing *Wille v. Southwestern Bell Tel. Co.,* 219 Kan. 755, 549 P.2d 903 (1976)). There are three remedies for a breach of contract: (1) damages; (2) rescission; and (3) specific performance. *Sykes v. Perry,* 162 Kan. 365, 176 P.2d 579, 585 (1947). However, the right to rescind does not accompany every breach.

See *Kohn v. Babb,* 204 Kan. 245, 461 P.2d 775, 780 (1969) (stating that "[t]he mere failure of one party to comply with the terms of a contract is not grounds for rescission"). Indeed, the Kansas Supreme Court has stated that "the right to rescind a contract is extreme and does not necessarily arise from every breach." *In re Estate of Johnson,* 202 Kan. 684, 452 P.2d 286, 292 (1969). Contrary to Farmers' arguments, and as previously noted, the right to rescind a settlement agreement also is circumscribed. *See, e.g., Welborn v. U.S.,* 736 F.Supp. 1070, 1071 (D.Kan.1990) (noting that "[a]bsent fraud, bad faith, or mutual mistake, the court cannot set aside a written settlement agreement"). For example, delay in performance is not enough to justify rescission of a settlement agreement unless the delay warrants the conclusion that performance is not intended. *Reynard v. Bradshaw,* 196 Kan. 97, 409 P.2d 1011, 1017 (1966).

■ In the instant case, it is clear that there has been a significant delay. Given the delay, the bankruptcy court may have been justified in finding that debtors did not intend to perform. However, the bankruptcy court did not make such a finding. The bankruptcy court found neither fraud, bad faith, mutual mistake, nor actual or constructive repudiation by debtors. In short, it found none of the factors necessary to support rescission. The court's examination of the record reveals that the bankruptcy court found, at most, a simple breach by the debtors of their contractual obligation to pay Farmers "promptly." Debtors' breach may give rise to an action for damages under the settlement agreement,[3] but, without an additional finding of fraud, bad faith, mutual mistake, or actual or constructive repudiation, it will not support rescission. Therefore, the court concludes that, under the circumstances, the bankruptcy court's rescission of the settlement agreement was improper under Kansas law.

---

**3.** Where a settlement agreement is an executory accord and not a novation, a debtor's material breach of the agreement revives the discharged agreement and the parties' rights are not controlled by the new agreement. *Coffeyville State Bank v. Lembeck,* 227 Kan. 857, 610 P.2d 616,

618–19 (1980); *Elliott v. Whitney,* 215 Kan. 256, 524 P.2d 699, 703 (1974). Farmers did not argue, nor did the bankruptcy court conclude, that the settlement agreement was merely an executory accord.

### B. Rescission of the Settlement Agreement: "Bankruptcy Law"

 Bankruptcy Rule 9019(a) allows the bankruptcy court to approve a "compromise or settlement." Pursuant to Bankruptcy Rule 9019(a), the bankruptcy court approved the parties' settlement agreement on February 28, 1992. At the hearing, Bankruptcy Judge John T. Flannagan stated he believed state law was "not totally relevant," apparently because the challenged agreement had been entered into pursuant to Bankruptcy Rule 9019.[4]

Although the record contains little identifying the portions of "bankruptcy law" upon which the bankruptcy court relied, it seems Judge Flannagan may have been exercising the bankruptcy court's inherent equitable powers. Bankruptcy courts have the inherent equitable power to reconsider, modify, or vacate their previous orders, including those approving settlement agreements, when the interests of justice require and no intervening rights would be prejudiced. *In re Babco, Inc.*, 133 B.R. 286, 289 (Bankr.D.Conn.1991). However, it appears this equitable power may be exercised only if the parties to the agreement can be restored to the positions they occupied before they entered the agreement. *See In re Lenox*, 902 F.2d 737, 740 (9th Cir.1969) (same); *A & A Sign Co., v. Maughan*, 419 F.2d 1152, 1155 (9th Cir.1969) (same). In the instant case, the debtors cannot be restored to the *status quo ante* because pursuant to the settlement agreement they have turned over farm equipment to Farmers which Farmers subsequently sold. It also appears that debtors changed their materially changed position as a result of the settlement agreement.

### IV. CONCLUSION

After examining the record, the parties' memoranda, and the relevant law, the court concludes that the bankruptcy court erred by rescinding the compromise and settlement agreement. Specifically, the bankruptcy court did not find fraud, bad faith, mutual mistake, or actual or constructive repudiation. Instead, it found only that debtors committed a simple breach of their contractual obligation to pay Farmers "promptly." Furthermore, under the circumstances, the bankruptcy court could not rely solely on its "inherent equitable powers" to rescind the agreement.

**IT IS BY THE COURT THEREFORE ORDERED** that the bankruptcy court's order rescinding the compromise and settlement agreement is reversed.

---

**4.** In *In re Check Reporting Services, Inc.*, 137 B.R. 653 (Bankr.W.D.Mich.1992), the bankruptcy court examined a Chapter 7 Trustee's motion for relief from an order approving the settlement of a preference claim. The bankruptcy court wrote as follows:

[c]onsent orders entered by the court pursuant to stipulation by the parties have a dual nature as both judicial decrees and contractual obligations. [Citation omitted]. The contractual nature of such agreements predominates in their enforcement. [Citation omitted].

*In re Check Reporting Services, Inc.*, 137 B.R. at 657. *Cf. Sweeney v. Walter E. Heller & Co.*, 102 B.R. 609 (Bankr.W.D.Mich.1989) (denying relief from court approved settlement where there was no basis for repudiating agreement under contract law).