No. 28,401.

GEORGE W. HALL et al., *Appellants*, v. THOMAS M. GALEY et al., *Appellees*.

(273 Pac. 459.)

Opinion filed January 12, 1929.

*John J. Jones,* of Chanute, and *E. D. Mikesell,* of Fredonia, for the appellants.

*Thomas E. Wagstaff, Jay W. Scovel, John Bertenshaw* and *Kirke C. Veeder,* all of Independence, for the appellees.

The opinion of the court was delivered by

DAWSON, J.: This appeal invokes a review of the construction given by the trial court to certain provisions of two contracts between plaintiffs and defendants governing their respective rights on plaintiffs' farm premises leased to defendants to prospect for and develop oil and gas.

The pertinent and controlling facts are these:

Plaintiffs own a farm of 280 acres in Wilson county. In January,

1924, they leased 240 acres of their farm to defendants for the development and production of oil and gas. Among the terms of the written lease-contract were these:

"10. . . . Lessee shall have the right at any time during or after the expiration of this lease to remove all machinery, fixtures, houses, buildings and other structures placed on said premises, including the right to draw and remove all casing. . . .

"11. Lessee agrees to lend his facilities, for marketing the production hereon, to the marketing of the gas produced from the gas well of lessor now on his lands and without cost for the service rendered."

Shortly after the execution of the above lease defendants drilled five producing gas wells thereon; and in May of the same year plaintiffs gave defendants a lease of the remaining forty acres of their farm for the same purposes. At the time this latter lease was executed there was already a gas well and some well rigging on this forty acres. This second lease contained some terms which require to be quoted:

"3. Lessee agrees to move a rig on the well now producing on the land herewith and to tube same into the Oswego shale and in case of failure to make said well into a commercial producer to commence another well on the lands herewith, said commencement to be immediately upon completion or failure to complete the said well now producing. If said well now producing is successfully completed into a commercial producer, then lessee will not be required to drill another well on the lands hereunder.

"4. In case of abandonment of the lease on the land herewith or the balance of lessor's land now leased to lessee, the lessee agrees to deliver, free of cost, to lessor his choice of any one of the wells producing on said lands, with all equipment therein and thereon to produce gas from said well."

"12. Lessee will have the right, at any time, to remove all machinery and fixtures placed on said premises by lessee, including the right to pull and remove casing, whereupon the requirements hereunder cease and this lease becomes null and void."

In plaintiffs' petition the foregoing facts were pleaded and the leases exhibited, and it was alleged that on June 16, 1926, production of oil and gas was abandoned on the 40-acre tract leased in May, 1924, and on October 22, 1926, defendants executed and filed for record a release of it. It was also alleged that by such abandonment of the 40-acre tract plaintiffs became entitled to exercise their choice of any one of the wells producing gas on the remainder of the farm still held under lease by defendants, and under such claim of right plaintiffs elected to select one of the producing wells thereon known by all the parties to this action as No. 5, located close to the 40-acre tract abandoned and surrendered by defendants.

Plaintiffs further alleged that their right to the well so chosen and to the equipment pertaining thereto and to the proceeds of gas sales therefrom had been denied by defendants. Plaintiffs prayed for an adjudication of their contract rights, and for judgment of their complete and exclusive ownership of the well selected by them under their contract rights, and for an accounting of the proceeds of the gas sales therefrom since June 16, 1926.

Defendants filed an answer and plaintiffs replied. The cause was called for trial and counsel for plaintiffs made his opening statement. Defendants thereupon brought matters to a summary conclusion by a motion for judgment on the pleadings and on plaintiffs' opening statement.

The trial court ruled as follows:

"That said motion should be sustained and that judgment should be rendered against plaintiffs and in favor of defendants for costs, for the reason only, that the terms of the lease relied upon by plaintiffs in their petition do not sustain any recovery for plaintiffs herein, nor sustain plaintiffs' right to any gas well located other than on the premises described in oil and gas lease exhibit B to plaintiffs' petition attached.

"The court doth further find that the petition of plaintiffs wholly fails to state a cause of action against the defendants, or either or any of them.

. . .

"It is, therefore, by the court considered, ordered, adjudged, and decreed, that judgment be and the same is hereby rendered upon the pleadings, in favor of defendants and against plaintiffs for all costs herein."

Apparently it was the trial court's theory that the two leases covering different parts of this farm had nothing to do with each other, and that this construction of their terms was so clear from the allegations of plaintiffs' petition and the lease-contracts themselves that the court could rule on it as a matter of law. It is quite true that the proper construction of a written contract is a matter for the court and not for a jury (*Platts v. Thompson*, 126 Kan. 544, syl. ¶ 4, 268 Pac. 833), but this court finds itself very much at variance with the trial court's construction of the instruments submitted for our review. The first lease-contract takes cognizance of a gas well existing on the farm before either of the leases were executed and that portion of the farm on which it was located was not included in the first lease, but the defendant lessees obligated themselves to lend their marketing facilities to dispose of the production of that well without cost to the plaintiffs. In the second lease this gas well again is given attention, and the de-

fendant lessees agreed to move the rig on it and to drill or "tube" down to a certain geological stratum, and if they should fail to make it a commercial producer they would commence another. In both the first and second leases the privilege is given the lessees to remove all machinery and fixtures, to pull and remove casings and the like, except as provided in the fourth clause of the second lease which needs critical attention:

"4. In case of abandonment of the lease on the land herewith or the balance of lessor's land now leased to lessee, the lessee agrees to deliver, free of cost, to lessor his choice of any one of the wells producing on said lands, with all equipment therein and thereon to produce gas from said well."

Does not this paragraph virtually tie together the two lease-contracts covering plaintiff's farm? If either the 40-acre tract leased in May, 1924, or the 240-acre tract leased in January, 1924, is abandoned by the lessee—what happens? In such case the agreement specifically set down in paragraph 4 is to take effect. The defendant lessees are to deliver to the plaintiffs their "choice of any one of the wells producing on said lands." What lands? The lands just mentioned, of course—"the land herewith [the 40 acres] or the balance of the lessor's land [the 240 acres] now leased to lessee."

The appellees argue that the word "lands" in paragraph 4 should be qualified by interpolating the adjective "abandoned" before the word "lands," so that the paragraph would read that in case of abandonment of either tract the plaintiffs would have their choice of any of the *producing* wells on the *abandoned* tract. It would hardly be worth the trouble to define the rights of the parties concerning a well of such trivial value. If it was worth anything the lease of the land where it was situated would not be abandoned. At all events the lease-contracts do not bear the interpretation contended for by appellees so clearly that it could be so declared as a matter of law.

In further support of the judgment, counsel for appellees cite the rule that the intention of the parties to contracts is to govern. That is a good rule, but its complement is that the contract itself is presumed to disclose the intention of the parties if it is free from ambiguity. Here some of the justices of this court are not inclined to concede that these lease-contracts are ambiguous, and are inclined to interpret them as contended for by plaintiffs. However, we are not asked to go that far at this time; and the court prefers

not to foreclose the matter, seeing that issues of fact are already joined, and when these are determined the right of this controversy may clearly appear. (*Thresher Co. v. Nelson,* 106 Kan. 716, 189 Pac. 907; *Dye v. Parker,* 108 Kan. 304, 308, 194 Pac. 640, 195 Pac. 599; *Sentney v. Central Cattle Loan Co.,* 119 Kan. 545, 548, 240 Pac. 856.)

The judgment is reversed and the cause remanded for further proceedings consistent herewith.