No. 28,864.

THE BISHOP & BABCOCK SALES COMPANY, *Appellant*, v. JOHN E. BROGAN et al., Partners, doing business as THE JUNCTION DRUG STORE, BROGAN BROTHERS, *Appellees*.

(280 Pac. 749.)

Opinion filed October 5, 1929.

*Charles Seacat,* of Independence, for the appellant.
*Walter S. Keith,* of Coffeyville, for the appellees.

The opinion of the court was delivered by

HARVEY, J.: This is an action to recover $208 for certain soda-fountain booths sold and delivered by plaintiff, a manufacturer or jobber of drug-store fixtures, to defendants, who owned and operated a drug store. There is no real controversy about the sale for

which the suit was brought. The defense was that a few months prior to this sale defendants had purchased a soda fountain from plaintiff on a written order contract and had paid for the soda fountain in part at the time the order was executed and the balance on the receipt of the bill of lading, and defendants alleged that they were damaged by delay in shipping the soda fountain and by various specified defects therein to the amount of $572, for which they asked judgment. Issues were joined on these claims of defendants. There was a trial to a jury, which answered special questions and found that plaintiff was indebted to defendants in excess of the amount sued for by plaintiff in the sum of $171.20. Judgment was rendered accordingly. Plaintiff has appealed.

On the trial it was stipulated that defendants had bought the merchandise for which suit was brought; that the same had been delivered to them; that the agreed price therefor was $208; that the merchandise had not been paid for, and should be paid for with interest at six per cent from June 21, 1926, except for the fact that defendants had a counterclaim against plaintiff, as set out in their answer. The case therefore resolved itself into an action for damages by defendants against plaintiff for the breach of the contract for the sale of the soda fountain. The jury found damages in favor of defendants and itemized the same as follows:

(a) For delay in delivering soda fountain.......................... $150.00
(b) Because the fountain was 2½ inches short of the exterior bar..... 75.00
(c) Because the draft arms are 4 inches off center.................. 25.00
(d) On account of noisy Frigidaire machine or motor............... 100.00
(e) On account of imperfect refrigeration.......................... 50.00

Generally speaking, plaintiff contends that none of the damages allowed by the jury resulted from a breach on the part of the plaintiff of the contract between the parties. With respect to the several items of damages there are further contentions in the alternative that they are not supported by the evidence, and that the proper measure of damages was not used. But we shall not find it necessary to deal specifically with these questions. We shall examine the various items of damages allowed to see if they are properly recoverable as breaches of the contract.

With respect to the allowance of $150 for delay in delivering the soda fountain it was defendants' contention that under the contract the fountain should have been delivered by June 1. Defendants were moving their drug store from one store building to another and desired to open their new store on June 1, and wanted

the fountain to reach them in time to be installed by that date. The fountain did not reach them until about June 26. They were unable to move until after the first of July, and as a consequence they had to pay, or did pay, rent on both buildings for a month at an extra cost to them of $150. The written order for the purchase of the soda fountain was executed by defendants May 3, 1926. With reference to time of shipment it provided:

"Ship on or about soon as possible—want to open store June 1, 1926. . . . This fountain not to be shipped later than May 25, 1926."

It contained a provision that it was made subject to the acceptance in writing of the plaintiff at its general office at Cleveland, Ohio. This written order was received by the plaintiff at its home office on May 10, and on that date plaintiff wired defendants:

"Rushing fountain, but tremendous volume and delay receiving materials makes it impossible to install for June first opening. Will require about four weeks to build your fountain. We are watching carefully and if any possible way of shipping sooner we will do so. Please wire collect if satisfactory."

And on the same date plaintiff wrote defendants:

". . . Our factory is considerably behind on shipments owing to the tremendous volume of business received this year and the delay in getting materials. We have instructed the factory to rush your order all that they possibly can and ship as soon after June 1 as possible."

On the receipt of this telegram and letter defendants, on May 12, wired plaintiff:

"Do the best you can, but would like fountain installed earliest possible moment. Rush."

It will be seen from this order and the correspondence that there was no agreement on plaintiff's part to ship the fountain by June 1 or on any specified date. When plaintiff received defendants' order it immediately notified defendants of its inability to construct and forward the soda fountain until some time in June, owing to volume of business and delay in getting materials, stating that the work would be rushed and completed as soon as possible, and asked to be advised if that was satisfactory. Defendants advised plaintiff to do the best it could. Hence the only agreement with respect to time of delivering the fountain was that the fountain would be constructed and delivered as soon as possible in view of other orders which plaintiff then had and delay in getting materials, and the defendants specifically acquiesced in that provision with respect to the time of delivery. Now there was no evidence that plaintiff did not

rush the construction of the soda fountain, nor was there any evidence that it was not completed and shipped as soon as possible, in view of other orders which plaintiff had and delay in getting materials. There was therefore no breach of the contract with respect to the time of delivering the soda fountain. From this it necessarily follows that no damages can be predicated upon such breach. The contract between the parties was in writing and consisted of the written order for the soda fountain and the correspondence between them. It is the duty of the court to interpret these writings as a matter of law. (*Smith v. Paper Co.*, 104 Kan. 732, 734, 180 Pac. 983; *Dohner v. Grocery Co.*, 116 Kan. 237, 240, 226 Pac. 767.) Plaintiff's objection to submitting this item of damage to the jury should have been sustained.

As to the item of damages allowed by the jury, $75, because the soda fountain was 2½ inches short of the exterior bar, it may be noted that there was no provision in the contract between the parties that the soda fountain would fit the exterior bar, or that it would not be short of the exterior bar 2½ inches, or any other distance. The only provision in the contract with reference to the length of the soda fountain was the statement in the written order, "Length of interior 13' 2"." This, on its face, refers to the inside of the bar and counter, the space within which the various units making up the soda fountain were to be placed, and the parol testimony of the defendant who gave the order and of the salesman who took it was to the same effect. If defendants had an exterior bar which they desired the soda fountain to fit they could have inserted a provision of that kind into their order or contract; but this was not done. There is nothing in the contract, or any of the correspondence between the parties, to indicate that plaintiff, in constructing this fountain, knew that defendants had an exterior bar, or the length of it, and certainly nothing to indicate that the plaintiff was to construct a soda fountain to fit the exterior bar. Hence the fact that it did not fit it snugly forms no basis for damages for the breach of contract between plaintiff and defendants. Substantially the same thing may be said with reference to the third item of damages, $25, allowed by the jury for the reason that the draft arms were not in the center of the fountain. The draft arms are the high faucets out of which soda water and plain water are drawn in connection with the soda-fountain business. They are about four inches to

the side of the center, and it was contended by defendants that this made an unsightly appearance to the fountain and depreciated its value. But there is no provision in the contract between the parties that these draft arms would be in the center of the fountain. In fact, as the various units were ordered to be placed in the interior of the fountain, it was not possible for the draft arms to be in the center. These units are manufactured in a uniform size. The order was for an odd number of them. The draft arms have to be placed between them. It was absolutely necessary, therefore, in constructing the fountain, to have one more of the units on one side of the draft arms than on the other. There is therefore no foundation for the allowance for this item of damages.

The other items of the damages allowed were for a noisy Frigidaire machine or motor, $100, and an imperfect refrigeration, $50. The written order provided for "Frigidaire plan No. 131." This is a cooling device not manufactured by plaintiff, a fact well known to defendants. In constructing the soda fountain plaintiff purchases from a manufacturer or jobber, and puts into the soda fountain the kind of cooling device the purchaser desires. In this case defendants desired and ordered placed in the soda fountain a designated cooling device. There is no provision in the contract and no representation on the part of the plaintiff that it would, or would not, be noisy, or that it would, or would not, produce perfect refrigeration. Hence there is no basis for allowing damages for breach of contract by reason thereof. It may be noted, however, that the difficulty defendants had with the refrigerating machine appears to have resulted largely from their lack of knowledge of how to set it or regulate it.

From what has been said it necessarily follows that there was no basis for allowing any of the items of damages as a breach of the contract between plaintiff and defendants.

The judgment of the court below will be reversed, with directions to enter judgment for plaintiff for the sum sued for, $208, with interest at six per cent since June 21, 1926.