No. 28,768.

THE H. D. LEE MERCANTILE COMPANY, *Appellant,* v. FRANK H. DIETER et al., *Appellees.*

(288 Pac. 545.)

Opinion filed
June 7, 1930.

*Park B. Pulsifer* and *Clyde L. Short*, both of Concordia, for the appellant.

*H. W. Hart, Glenn Porter, Enos E. Hook, Edward H. Jamison* and *Getto McDonald*, all of Wichita, for the appellees.

The opinion of the court was delivered by

DAWSON, J.: The H. D. Lee Mercantile Company brought this action against Frank H. Dieter and Charles A. Dieter to recover on two promissory notes dated March 14, 1924, due September 14, 1924, payable to plaintiff in the sums of $3,816.75 and $764.38. Credits amounting to $1,341.08 were entered on one of the notes and $245.53 on the other.

The notes bore the signatures of both defendants. Frank signed the notes about the time of their dating. An issue in this case was whether Charles signed them at the same time or several months later.

Plaintiff's petition contained the usual allegations of an action on promissory notes, with the following addition thereto:

"That after the maturity of said note, and before any payments were made and indorsed thereon, for a valuable consideration, the defendant, Chas. A. Dieter, signed and executed said note as one of the makers thereof, thereby promising and agreeing to pay the same."

Separate verified answers were filed by defendants. In Frank's answer it was averred that on September 16, 1924, the notes were paid and satisfied by a trust deed executed by him in favor of his creditors, one of whom was this plaintiff. By its terms a stock of merchandise in Oak Hill, together with certain notes and book accounts pertaining thereto, was assigned and transferred to three trustees—Federhen, credit man for the plaintiff, Myers, agent for a similar creditor, and Short, attorney for a large number of other creditors. These trustees were authorized to dispose of the assets assigned to them for the benefit of all creditors who under the trust deed would "accept the dividends in full settlement and satisfaction of their claims."

Frank H. Dieter further answered that the trustees took possession of the stock of merchandise and sold it, and plaintiff received

and accepted its proportional share of the dividends. The answer also pleaded failure of consideration.

The separate answer of Charles A. Dieter was to the same effect. It also contained a general denial and alleged that he signed the notes at the same time as his comaker.

Plaintiff replied to these answers, alleging that the release of liability in the trust deed was void because at the time of its execution Frank H. Dieter well knew the property assigned was wholly insufficient to satisfy the lawful demands of his creditors, and that he represented to this plaintiff and other creditors that he had no property other than the assets specified in the trust deed excepting an interest in his deceased father's estate; and that if that interest were withheld from the assignment, indebtedness to relatives aggregating $18,000 would not be presented against the assets assigned under the trust deed. Plaintiff further replied that the trustees had relied upon such representations and did not discover their falsity until the assigned assets had been received and sold and the proceeds disbursed to the creditors. The reply further alleged that the representations touching the extent of Frank H. Dieter's property were untrue; that at the time of the assignment he owned certain real estate, furniture and equipment pertaining to a hotel in Junction City worth $12,000, a moving picture theater equipment in Oak Hill worth $750, and town lots in Oak Hill worth $450, all of which he concealed from the trustees and retained for his own use, to the loss and damage of plaintiff and other creditors.

The reply further alleged that after the execution of the trust deed defendants Frank and Charles Dieter reëxecuted the notes in controversy. A copy of each of the notes was attached to plaintiff's petition. Photostatic copies of them are submitted for our inspection. They are plainly dated March 14, 1924, and not otherwise, and are signed thus:

> "FRANK H. DIETER,
> DIETER MERCANTILE CO.,
> By FRANK H. DIETER,
> DR. CHAS. A. DIETER."

Jury trial.

To support its allegations of misrepresentation and concealment of his property by Frank H. Dieter, plaintiff exhibited a copy of a letter written by one of the trustees to the creditors concerned, which letter had been read and tacitly approved by Frank H. Dieter before mailing. It read, in part, as follows:

"Frank H. Dieter, doing business as Dieter Mercantile Co., Oak Hill, on the 16th gave to the writer, Clyde L. Short, M. H. Myers, credit man for Fitts-Smith Dry Goods Co., Kansas City, and W. H. Federhen, credit man, Lee Mercantile Co., Salina, a trust deed, covering his stock of merchandise, fixtures and book accounts at Oak Hill. The assignment was made after a conference at Oak Hill between Mr. Myers, Mr. Federhen and the writer, representing commercial creditors, and was taken to conserve the assets of the estate and prevent bankruptcy. Many suits were pending against Dieter, many judgments were outstanding, and executions were in the hands of the sheriff.

"Indebtedness listed aggregates approximately $21,000, and will probably exceed that. An invoice is being taken of the stock and fixtures, which will probably run about $14,000. Notes and book accounts aggregate $3,000 of but little value.

"The H. D. Lee Mercantile Company and Fitts-Smith Dry Goods Company are two of the heavy creditors, and had their representatives on the ground and reached the conclusion that the action was for the best interests of the creditors and to conserve the property of Dieter and to provide for a fair and equal distribution of the proceeds of the same.

"There are no preferences under the assignment, and all of Dieter's property is included, except his home (which is exempt and mortgaged) and a questionable equity in real estate in Clay county, mortgaged for $42,000. This is property in which Dieter has a one-fourth interest, but on account of which he claims to be indebted to his brothers in the sum of $18,000, and the brothers were not listed as creditors, do not participate in the assets under the trust deed, and for that reason the real estate was not transferred to the creditors.

"In consideration of turning this property over to his creditors for administration, Dieter insisted that the creditors accept the dividends paid by the trustees, in full settlement and satisfaction of their claims, and such clause is in the trust deed. . . .                    CLYDE L. SHORT, *Trustee.*"

Federhen, one of the trustees, testified that when the notes were dated and executed on March 14, 1924, they were signed thus:

"DIETER MERC. Co.,
By FRANK H. DIETER."

Federhen further testified that on November 19, 1924, at the Planters State Bank, Charles A. Dieter signed the notes in suit.

Elsewhere in his testimony Federhen stated that at the time the trust deed was executed Frank H. Dieter said nothing about owning hotel property in Junction City; and after the closing of the trust estate he [Federhen] *learned* that Frank Dieter owned a hotel property in Junction City worth $12,000 and owned a mortgage on real estate in Junction City of $4,000, and that Frank had told the trustees that aside from his interest as one of several heirs of his father's estate which was chiefly Clay county realty the only property

he owned was as specified in the trust deed. Certain other items of evidence were introduced, including correspondence which might have warranted the jury, if so disposed, to draw an inference that Frank H. Dieter was not quite frank with some of his creditors. On the other hand, however, it was shown, in part by evidence and otherwise by general assent of the litigants and their counsel, that the Dieter Mercantile Company had been an important business institution in Oak Hill for many years. It had been owned and operated by J. G. Dieter, who died some years ago, leaving an estate consisting chiefly of the mercantile establishment in Oak Hill, town lots and buildings in Oak Hill and Clay Center, and some 500 acres of Clay county land. At the time of his death the elder Dieter was heavily involved; and agreements pertaining to their father's affairs were made between his sons, Frank H. Dieter, Dr. Charles A. Dieter, Dr. J. N. Dieter and their sister. These parties had acquired the interest of all other heirs. By these agreements Frank H. Dieter was to take over the mercantile establishment and endeavor to liquidate its burden of obligations to various creditors, the largest of whom was this plaintiff. It was shown and not seriously contested that Frank H. Dieter was indebted to the Dieter estate in which his two brothers and sister and himself were beneficially concerned in a sum so great that if he were forced into bankruptcy the legitimate claims of the Dieter estate and of the persons beneficially interested therein against him would have to be pressed and those claims would absorb so great a proportion of Frank's assets that there would be less to divide among plaintiff and the other creditors than they would receive if they were content to accept an assignment of the mercantile stock and its incidents and divide its proceeds between them. Dr. J. N. Dieter testified:

"I am a brother of the two defendants and I am familiar with this transaction. I had a conversation at my office in Abilene on September 15, 1924, with my brother Frank, Mr. Federhen and Mr. Myers. I had an agreement with Mr. Federhen and Mr. Myers specifically as to what they were to cover in their assignment.

"Q. What was that agreement? A. The stock of merchandise, books and notes and not to go into outside holdings. . . . I had advanced to the estate in the neighborhood of $25,000 to $30,000 and wanted to get an agreement out of these men (they were threatening bankruptcy or trust assignment) to stay out of this other stuff. . . . In that conversation the Junction City property was mentioned. It didn't belong to Frank and they were

informed of the circumstances in connection with it. Mr. Federhen said it didn't amount to anything and he didn't consider it anyhow. He also said the vacant lots across from the store were a minor asset. The picture show did not belong to Frank. On September 15 and 16, 1924, the estate owned the picture show."

On cross-examination the witness testified in part:

"I had put about $25,000 in the stock and I had to be certain they (referring to creditors) didn't get into the outside holdings."

In the matter of the Junction City hotel it was shown that Frank had traded a herd of mules belonging to the Dieter estate for the hotel property. It was conveyed in the first instance to him, but he promptly reconveyed it to one of his brothers for the benefit of the Dieter estate.

The jury returned a general verdict for defendants and judgment was entered accordingly.

Plaintiff appeals and assigns certain errors, the first of which is predicated on its theory that the release clause in the assignment for the benefit of Frank Dieter's creditors was fraudulent and void because that assignment had not included all of Frank's property. But the evidence which the jury saw fit to believe was that Frank H. Dieter made no pretense that he was assigning all his property. On the contrary, the assignment was purposely limited to the assets pertaining to the Dieter Mercantile Company, and the evidence showed it was clearly understood and agreed to by the trustees that his interest in his father's estate was not to be included—otherwise there would have been no reason or inducement for the Dieter estate and Frank's relatives to withhold their large claims against him, and no reason why the ordinary processes of a bankruptcy court should not have been set in motion against him. The evidence, which was quite sufficient in substance and to which the jury gave full credence, was that there was no concealment of assets by Frank H. Dieter, and that the interest in the Junction City hotel which had been temporarily conveyed to him in exchange for some mules belonging to his father's estate was not of Frank's property. The facts of that transaction were explained to the trustees at the time of the assignment. Neither was there any semblance of fraud in keeping the picture theater equipment out of the assignment. It was not Frank's to assign, and neither were the town lots in Oak Hill.

This conclusion disposes of another error based on the evidential

significance which plaintiff sought to attach to Frank H. Dieter's tacit acquiescence in the statement of facts contained in the circular letter prepared and mailed to the creditors by Short, one of the trustees. It contained no material misstatement of fact, nor any semblance of fraud.

It is next contended that the trial court misconceived the issues and instructed the jury that the voluntary assignment was one of specific property only, and even though the assignor had other property the release was binding on the creditors. In these respects the trial court's rulings were correct. There was no ambiguity in the trust deed. Consequently its interpretation was for the court and not for the jury. (*Platts v. Thompson,* 126 Kan. 544, syl. ¶ 4, 268 Pac. 833; *Hall v. Galey,* 127 Kan. 310, 312, 273 Pac. 459; *Bishop & Babcock Sales Co. v. Brogan,* 128 Kan. 779, 280 Pac. 749.) Appellant presses on our attention, with copious citations of authority, the familiar rule of law that an assignment for the benefit of creditors must assign all the debtor's nonexempt property, otherwise it is void. The transaction in the instant case was not an ordinary assignment under the statute (*Woodard, Trustee, v. Morrissey,* 115 Kan. 511, 223 Pac. 306), nor was it contemplated by any of the parties that it should be so construed. The assignment created a trust for the especial benefit of a certain class of creditors. It was effected by negotiation between two classes of creditors— the debtor's relatives and his father's estate, who held the heaviest claims against the debtor but who were disinclined to press them to immediate liquidation constituting one class, and the ordinary business creditors of the Dieter Mercantile Company, like plaintiff, who were pressing for immediate satisfaction, comprising the other. By agreement of representatives of all parties concerned a trust estate was created of the assets of the Dieter Mercantile Company for the satisfaction of the claims of plaintiff and creditors of similar character and that the other class of creditors should not participate in the dividends. Since no one questioned the authority of the trustees to act for the participating creditors, their acceptance of the trust and their performance of the trust duties and the acceptance of the dividends realized from the sale of the trust property by such creditors as plaintiff completely foreclosed all question by plaintiff touching the validity of the release, which was an integral and vital part of the trust deed.

One of the headnotes in the early case of *Scott v. Edes,* 3 Minn. 377, reads:

"The acceptance of dividends under an assignment, by a creditor, is an assent to, and confirmation of such assignment by him; and if he afterwards discover its fraudulent character, he must offer to return whatever he has received under it, before he can be in a position to disaffirm it."

In Gutzwiller v. Lackman, 23 Mo. 168, it was held:

"A creditor who knowingly acquiesces in a sale made by a trustee under an assignment for the benefit of creditors, and accepts his proportional share of the proceeds of the sale, is estopped to deny the validity of the sale."

In the case at bar, Federhen, agent of plaintiff, took an active hand in the creation of the trust, served as one of the trustees, and his principal accepted its proportional share of the proceeds of the sale of the trust property, consequently plaintiff is estopped to question the validity of the terms upon which the trust deed was executed, and particularly is plaintiff estopped to question the validity of the release which was the inducing cause for the debtor to execute the trust deed and one of the inducing causes for the relatives and the father's estate to forego their right to participate in the dividends.

Other authorities supporting this view are: *Butler & Alford v. O'Brien et al.,* 5 Ala. 316; *Bowden v. Spellman,* 59 Ark. 251; *Thompson et al. v. Peck et al.,* 115 Ind. 512; *Adlem v. Yard,* 1 Rawle (Pa.) 163; 5 C. J. 1295-1296.

Appellant suggests that the dividends have been credited on defendants' notes, consequently that a return of the dividends is unnecessary to a disaffirmance. That contention leaves out of consideration the rights of that class of Frank Dieter's creditors who were induced by Federhen, plaintiff's agent, to agree not to participate in the dividends of the trust estate.

Another error is assigned on the admission in evidence of the testimony of Frank H. Dieter and Dr. J. N. Dieter touching the efforts of Federhen to collect on these notes prior to the execution of the trust deed, and also on certain testimony of Charles A. Dieter. It does not readily appear how this testimony transcended the rules of evidence. An issue in this case was whether the notes in suit were re-signed and reëxecuted by the makers after their maturity and after the execution of the trust deed. The testimony of defendants was competent as bearing on that issue.

It is finally urged that the verdict and judgment were contrary to the evidence and contrary to law. The record contains no error of law, nor does it reveal anything which would permit this court to hold that the verdict was not supported by competent and sufficient evidence.

The judgment is affirmed.