No. 29,334.

George W. Hall et al., *Appellees*, v. Harry S. Shaffer et al., *Defendants;* Thomas M. Galey et al., *Appellants.*

(289 Pac. 442.)

Opinion filed July 5, 1930.

*Thomas E. Wagstaff, Jay W. Scovel, John Bertenshaw* and *Kirke C. Veeder,* all of Independence, for the appellants.

*John J. Jones,* of Chanute, and *E. D. Mikesell,* of Fredonia, for the appellees.

The opinion of the court was delivered by

JOHNSTON, C. J.: The plaintiffs brought this action to recover a certain gas well drilled under a lease, with the equipment therein, and in case that was found to be impracticable, then they asked recovery for the alleged value of the well and equipment, alleged to be $10,000, and also to recover for the gas taken from the well since June 16, 1926.

The case was here before upon a judgment that had been rendered for defendant on the pleadings. That judgment was reversed and the cause remanded for further proceedings. (*Hall v. Galey*, 127 Kan. 310, 273 Pac. 459.) The issues formed by the pleadings were fully stated in the cited case and need not be restated in detail here. A brief statement of the controversy is that the Halls owned a farm of 280 acres, and in January, 1924, leased 240 acres of the farm to the Galeys for the development and production of oil and gas. The lease provided that the lessee should lend his facilities for marketing the production of the gas, also to the marketing of gas produced from a gas well of the lessors then on the lands without cost for the service rendered. Later, and in May of 1926, a lease of the remaining 40 acres of the farm was made to the defendants, on which there was the gas well mentioned and some well rigging. This later lease provided that the well on the land leased should be drilled down to the Oswego shale, and in case it could not be made a commercial producer another well should be commenced on that land, and if the well then on the land was successfully completed into a commercial producer the lessee should not be required to drill another well on that tract. There was a further provision that in case of abandonment of the lease on the forty-acre tract or of the lease on the balance of the lessor's land, the lessee would deliver, free of cost to the lessor, his choice of any one of the producing wells on the leased land with all equipment therein and thereon to produce gas from said well. The lessee was given the right to remove machinery and fixtures which they had placed on the land, including the right to pull the casing. On October 22, 1926, the lessee abandoned the lease on the forty-acre tract and filed a written release or abandonment, which was made a matter of record. The plaintiffs thereupon exercised their right under the lease to choose one of the producing wells on the remaining part of the farm, and selected what is known by the parties as well No. 5,

located close to the forty-acre tract which had been surrendered. The defendants refuse to surrender to plaintiffs well No. 5 which they selected, and defendants have continued to appropriate and market the gas therefrom, including a small quantity of gas from other wells measured through the meter on well No. 5. The defendants never made any attempt to segregate or keep track of the quantity produced solely from No. 5. The gas produced was sold for eight cents per 1,000 cubic feet, and the gas marketed for the years 1926, 1927 and 1928 and a part of 1929 through the meter amounted to 89,514 cubic feet, and it is said that well No. 5 was capable and did produce practically all the gas that went through the meter.

One of the defenses pleaded at the outset of the case was that a mistake had been made in the location of well No. 5; that it was intended to be located on the forty-acre tract, and that plaintiffs either believed or fraudulently represented it to be on the forty-acre tract, and that when defendants learned the well was outside of that tract they felt impelled to surrender the lease. They alleged that the fraud of plaintiffs in this respect entitled them to ask for the cancellation of the release and the reinstatement of the lease on the forty-acre tract. When the case came on for trial on November 3, 1927, this cross demand was dismissed by them on their own motion. At the second trial, begun on May 22, 1929, after plaintiffs' testimony had been closed, the defendants asked and obtained leave to reinstate the cross demand mentioned, and offered the testimony of defendant Galey, with a view of supporting the demand. Objection to the testimony was made upon the ground that it related to negotiations prior to the execution of the lease and were necessarily merged in it and also that it was barred by the statute of limitations. The testimony was excluded by the court, and among other things the court stated that the statute of limitations appeared to have run against this demand. What the excluded testimony would have been, if admitted, is not disclosed by the record. There was no offer of what Galey's testimony would have been, and the ruling was not definitely assigned as error on the motion for a new trial. More than these objections is the one that what the testimony was or would have been was not produced on the motion for a new trial as the statute provides. The error, if any was committed, as to the exclusion of the evidence is not available on this appeal, since it was not brought forward and presented on

the motion for a new trial. (*Scott v. King,* 96 Kan. 561, 152 Pac. 653, and cases cited.)

There is a contention that the amount allowed to plaintiffs was not properly computed and is excessive. The gas, most of which was obtained from well No. 5, the property of plaintiffs, and a little from other wells of defendants, was measured, it appears, through a single meter used by defendants. The defendants did not provide facilities for segregating that derived from the minor wells, a small quantity of which still passed through the meter. It was the duty of the defendants to furnish facilities for measuring gas to be delivered from the wells. It had been practically determined in the earlier appeal that plaintiffs were rightly entitled to well No. 5 and the production from it. (*Hall v. Galey,* supra.) The defendants, however, continued to appropriate gas from this well, which was the substantial production obtained from the field, and the gas measured through the meter was the only way of determining the quantity obtained from plaintiffs' well. This measure was the one adopted by the court in rendering judgment. There was evidence tending to show that but little gas was piped from the other wells. A witness said that he had blown the connected wells several times and found they were not producing gas, "that there was nothing to blow." This is a case for the application of the doctrine of the confusion of goods. As the defendants wrongfully mingled their gas with that of the plaintiffs, so that there was no way of distinguishing that of plaintiffs from the part belonging to defendants, this in a sense forfeits their interest. In 12 C. J. 491 the rule is stated:

"Where one fraudulently, willfully or wrongfully intermingles his goods with those of another, so that there is no evidence to distinguish the goods of the one from those of the other, the wrongdoer forfeits all his interest in the mixture to the other party. In other words, he cannot recover for his own proportion or for any part of the intermixture, but the entire property vests in him whose right is invaded."

See, also, *Bank v. McHenry,* 113 Kan. 39, 213 Pac. 1059; *Smith v. Township of Au Gres, Michigan,* 150 Fed. 257; *Armory v. Delamirie,* 1 Smith's Leading Cases, 9th ed. 631.

Under the evidence in the case the defendants have no grounds to complain of the rule applied in measuring the amount of plaintiffs' recovery. No material error is found in the record, and therefore the judgment is affirmed.