In re INTERNATIONAL DISTRIBUTION CENTERS, INC., Debtor.

OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF INTERNATIONAL DISTRIBUTION CENTERS, INC., Plaintiff,

v.

JAMES TALCOTT, INC. also formerly known as James Talcott Business Credit, Inc. and now known as Congress Financial Corporation, Defendant.

No. 88 CIV 4133 (KC).

United States District Court, S.D. New York.

July 24, 1989.

Helen Davis Chaitman, Ross & Hardies, Somerset, N.J., for Gerald Eskow.

John F. Scheffel, Kissam & Halpin, New York City, for trustee, John Pereina.

Gilbert Backenroth, Brian Wild, Hahn & Hessen, New York City, for Congress Financial Corp.

## AMENDED MEMORANDUM OPINION *

CONBOY, District Judge:

This is an appeal from an Order of the Bankruptcy Court entered on April 27, 1988, upon the Trustee's application, approving a settlement of proceedings whereby an action against Congress Financial Corporation, successor to James Talcott Business Credit, Inc. ("Talcott") was settled by payment of $50,000 to the Debtor's bankruptcy estate. Although the Bankruptcy Judge did not make an explicit ruling that the application and hearing before him was a core proceeding within the meaning of 28 U.S.C. § 157(b)(3), the full record clearly supports the conclusion that he treated it as such. Accordingly, the standard of review set forth in Bankruptcy Rule 8013 is controlling on this appeal.

The order herein may be reversed, therefore, only if the Bankruptcy Court's finding that the Trustee's proposed settlement met or exceeded the lowest standard of reasonableness was clearly erroneous.

The Debtor filed a voluntary Chapter 11 petition on July 15, 1985 and moved for an order, which was granted by the Bankruptcy Court on August 6, 1985, authorizing secured financing by Talcott and granting it a superior priority lien over all administrative expenses in the Chapter 11 proceeding. Talcott was to be reimbursed for its legal fees under the order, which contained no provision that the Bankruptcy Court was to explicitly review and approve a detailed, itemized submission of legal services rendered as a precondition for payment of the fees. This order was predicated upon representations by the Debtor concerning the value of its assets, which constituted Talcott's Security.

The creditor's committee then sued Talcott, and on May 19, 1987 the Chapter 11 case was converted to a Chapter 7 case and the Trustee herein was designated.

The Trustee then examined the claim and underlying records in the pending suit, negotiated its settlement, and sought the approval of the Bankruptcy Court. At the hearing conducted on April 27, 1988 only the appellant herein appeared in opposition to the order that is challenged here.

An examination of the record of the hearing in the Bankruptcy Court makes it clear that appellant did not object in substance to the terms of the settlement, but sought a thirty (30) day adjournment to conduct discovery as to the validity of legal fees, miscellaneous expenses and interest charges. The Court heard, without objection from appellant, an assertion by counsel for the appellee that Mr. Eskow was an admitted thief who had said "I took $1.3 million of somebody else's money, I did not pay my taxes." Record at 22. Counsel further asserted that "this plea for discovery at this point by the man who knew more than anyone else in this whole case, more than

* This is a corrected version of the court's Memorandum Opinion dated April 11, 1989, 99 B.R. 529.

he'll ever tell ... is absurd." *Id.* at 23. The Bankruptcy Court noted that the Appellant had played a principal role in the case for a year and a half, and had had adequate opportunity to review the record, and found that no justification had been shown to warrant the requested adjournment. *Id.* at 14–15.

The appellant told the Bankruptcy Court that "[o]ur objection involves *not necessarily an objection to the terms of settlement* but really just an objection so that we may adjourn for a thirty day period in order to conduct certain discovery." *Id.* at 14. (emphasis added).

Based upon the record before him, the Bankruptcy Judge found that nothing in the objections filed by Mr. Eskow explicitly attacked the Trustee's judgment in making his determination, and that Mr. Eskow had had ample opportunity from the pendency of the case until the date of the hearing to review and familiarize himself with all facets of the matter, notwithstanding the fact that he "is probably the one person most knowledgeable about this case." *Id.* at 25. This Court concludes, upon the full record, that the Bankruptcy Judge did not abuse his discretion in declining to adjourn the hearing for further discovery, good cause not having been demonstrated by Mr. Eskow.

The Trustee insists that the appeal herein taken is, in fact and practical effect, an appeal of Judge Blackshear's interlocutory order denying the continuance sought by Mr. Eskow for further discovery, and that, as such, the appeal should be dismissed as no application for permission to appeal was made pursuant to 28 U.S.C. § 158(a), and Bankruptcy Rule 8001(b). Trustee's Brief, 5–10. The Court declines to so rule, since appellant's notice of appeal and argument in this Court object to the comprehensive approval by the Bankruptcy Judge of the Trustee's Application.

Turning to the substantive merits, appellant's assertion that the Bankruptcy Judge did not review the merits of the case proposed for settlement is plainly contradicted by the record of the Hearing. *See* Appendix I, 3–6, 8–14, 23–24.* The Trustee's Application and presentation before the Judge contained a most detailed, impartial and convincing review of the merits of the case and the process by which the Trustee arrived at his conclusions and recommendation. *See* Appendix II.* Indeed, as I have already observed, Mr. Eskow apparently was in agreement with the Trustee, Talcott and Judge Blackshear on the quality and persuasiveness of the Trustee's application, since he did not raise any systematic or focused objection to it in Bankruptcy Court.

The Court heard, considered, and accepted the Trustee's assertion that the provision in the settlement for payment of the creditors' legal fees did not require separate, detailed documentation because the Bankruptcy Judge hearing the matter had personally and intensively supervised discussions and hearings that served as the predicate for the amount of legal fees to be approved. Record at 13.

■ The Supreme Court set forth the procedure a court should follow in determining whether or not it should approve a compromise agreement in *Protective Committee for Independent Stockholders of TMT Trailor Ferry, Inc. v. Anderson*, 390 U.S. 414, 88 S.Ct. 1157, 20 L.Ed.2d 1·(1968). The Court required that the bankruptcy judge make an informed, independent judgment as to whether a compromise was fair and equitable. To arrive at such a judgment, the Court stated that:

> [A bankrupty judge should] apprise [himself] of all facts necessary for an intelligent and objective opinion of the probabilities of ultimate success should the claim be litigated. Further, the judge should form an educated estimate of the complexity, expense and likely duration of such litigation, the possible difficulties in collecting on any judgment which might be obtained, and all other factors relevant to a full and fair assessment of the wisdom of the proposed compromise.

*Id.* at 424, 88 S.Ct. at 1163. However, a court need not conduct an independent in-

---

* Appendices I and II omitted by the court for    purposes of publication.

vestigation in formulating its opinion as to the reasonableness of a settlement. A court may give weight to the Trustee's informed judgment that a compromise is fair and equitable, *In re Carla Leather, Inc.*, 44 B.R. 457 (Bankr.S.D.N.Y.1984), *aff'd,* 50 B.R. 764 (S.D.N.Y.1985), and consider the competency and experience of counsel who support the compromise, *In re Texaco,* 84 B.R. 893 (Bankr.S.D.N.Y.1988). As stated by the United States Court of Appeals for the Ninth Circuit in *In re Blair,* 538 F.2d 849, 851 (9th Cir.1976):

> The bankruptcy judge and the district court may, in a case such as this, give weight to the opinions of the trustee, the parties, and their attorneys. The judge and court may consider the principals' belief that the factors outlined [in TMT] have been explored and considered and that the compromise is fair, reasonable, and the wisest course.

A trial or 'mini-trial' on the merits is not required for court approval of a settlement. *Id.* The court's responsibility is "to canvass the issues and see whether the settlement 'fall[s] below the lowest point in the range of reasonableness.'" *In re W.T. Grant,* 699 F.2d 599, 608 (2d Cir. 1983), *cert. denied,* 464 U.S. 822, 104 S.Ct. 89, 78 L.Ed.2d 97 (1983) (quoting *Newman v. Stein,* 464 F.2d 689, 693 (2d Cir.1972) *cert. denied,* 409 U.S. 1039, 93 S.Ct. 521, 34 L.Ed.2d 488 (1972)). Indeed, a court may approve a settlement even if it believes that the Trustee ultimately would be successful. *In re Teltronics Services, Inc.,* 46 B.R. 426 (E.D.N.Y.1984), *aff'd,* 762 F.2d 185 (2d Cir.1985).

Approval of the compromise by Judge Blackshear was clearly consistent with the standards set forth in *TMT.* The Trustee's Application for the approval of the settlement specifically discussed each claim asserted in the Complaint (Application, ¶ 6–9), evaluated the merits of each claim, set forth the complexity of the litigation and attendant cost and analyzed other factors which the Trustee believed relevant to a full and fair assessment of the reasonableness of the settlement. Together with all the pleadings pertaining to the proposed settlement, Judge Blackshear had also presided over countless motions and proceedings in this Debtor's case and therefore had an intimate knowledge of the history of the matter, the parties involved throughout the case, and the context in which the settlement and the claims compromised therein arose. Judge Blackshear's consideration of the whole record in evaluating the reasonableness of the settlement was proper. *In re A & C Properties,* 784 F.2d 1377, 1384 (9th Cir.1986), *cert. denied,* 479 U.S. 854, 107 S.Ct. 189, 93 L.Ed.2d 122 (1986); 9 *Collier on Bankruptcy,* ¶ 9019.03 at 9019–5 (15th ed. 1988). The transcript of the April 27, 1988 hearing reflects that the court reviewed the Trustee's analysis of the claims and Eskow's Objection, Record 24–25, such as it was. Accordingly, it is quite clear that the bankruptcy court's review complied with the procedures set forth in *TMT* and its progeny, and that the required standard, that the settlement should be approved unless it falls below the lowest point in the range of reasonableness, has in this case been properly applied. *In re W.T. Grant,* 699 F.2d at 608.

On the question of the reasonableness of the creditor's legal fees and expenses, as recommended by the Trustee, the record is uncontroverted that, as the Trustee asserts, the Trustee's recommendation on the amount of Talcott's legal fees was *less* than that stated by Mr. Eskow in the course of the litigation; that Talcott's legal expenses after the sale of Debtor's assets had not been reimbursed; and that the $50,000 being paid to settle a lawsuit of dubious merit represented at least in part a disgorgement of reimbursed legal fees. Appendix I, 5–6; Appendix II, 5.

In *In re Continental Vending Machines Corp.,* 543 F.2d 986 (2d Cir.1976), the Second Circuit held that a secured creditor's lien for attorneys' fees, under a security agreement requiring reimbursement thereof by the Debtor, was an ordinary secured claim governed by the terms of the security agreement and not by the bankruptcy Act provisions regulating applications for fee allowances. *Id.* at 992. As noted in the Trustee's Application, pursuant to IDC's

financing agreement with Talcott, which was assumed by and incorporated into the Financing Order, Talcott was permitted to charge legal fees to IDC's account.

This case is easily distinguishable from *In re Nicfur–Cruz Realty Corp.*, 50 B.R. 162 (Bankr.S.D.N.Y.1985), which involved a secured creditor seeking attorneys' fees in connection with the foreclosure sale upon its collateral. In the instant case there was an order of the court approving and incorporating the provision providing for payment of attorneys' fees. Furthermore, the Trustee advised the bankruptcy court that the legal fees were one of the factors considered in arriving at the $50,000 compromise amount. Appendix I, 13. In view of the many proceedings in which Talcott and its counsel were involved before the bankruptcy court, most of which Judge Blackshear presided over, the court had a basis for determining the reasonableness of the fees, and implicitly did so in approving the settlement.

Finally, appellant insists that it was error to approve the settlement of the suit because it contained a claim under 11 U.S.C. § 506(c) that Talcott was liable for the reasonable and necessary costs of preserving and disposing of the assets of the estate, since, according to appellant, Talcott was "the sole beneficiary of the debtor's bankruptcy case." However, the issue of lender liability for administrative costs was never raised at the Hearing by appellant, and Talcott was not the "sole beneficiary" herein.

As our Circuit has said in *In re Flagstaff Foodservice Corporation*, 762 F.2d 10, 12–13 (2d Cir.1985):

> The debtor in possession also must show that its funds were expended primarily for the benefit of the creditor and that the creditor directly benefited from the expenditure. *Brookfield production Credit Ass'n v. Borron*, 738 F.2d 951, 952 (8th Cir.1984) (quoting the district court's opinion, 36 B.R. 445, 448 (E.D.Mo. 1983)). A debtor does not meet this burden of proof by suggesting possible or hypothetical benefits. *Brookfield Production Credit Ass'n v. Borron*, supra, 36 B.R. at 449. Proof of direct benefits

sought and received by GECC is completely lacking in this case. Indeed, appellees never requested an evidentiary hearing for the purpose of tendering such proof.

\* \* \* \* \* \*

[w]e reiterate the concern ... that rulings [to the contrary] would discourage creditors from supporting debtors' reorganization efforts.

Accordingly, the order of the Bankruptcy Court is affirmed.

SO ORDERED.