In re MEDOMAK CANNING, Debtor.

Dennis G. BEZANSON,
Trustee, Plaintiff,

v.

BAYSIDE ENTERPRISES, INC., et al.,
Defendants/Appellees.

ACME ENGINEERING CO., Cara
Corporation, Cross–Claim
Plaintiffs/Appellants,

v.

BAYSIDE ENTERPRISES, INC., Poultry
Processing, Inc. and Bernard J. Lewis,
Cross–Claim Defendants/Appellees.

Civ. No. 89–0192–P.

United States District Court,
D. Maine.

March 1, 1990.

Daniel W. Sklar, Gregory W. Swope, Manchester, N.H., for Cara Corp.

Sideney S. Thaxter, Christopher Kennedy, Portland, Me., for Acme Engineering.

Richard E. Poulos, Portland, Me., for Bayside Enterprises.

## MEMORANDUM OF DECISION AND ORDER AFFIRMING THE DECISION OF THE UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF MAINE

GENE CARTER, Chief Judge.

Appellants appeal an order of the United States Bankruptcy Court for the District of Maine which dismissed their cross-claims against Appellees. 101 B.R. 399. In their cross-claims Appellants seek to equitably subordinate Appellees' secured liens against the bankruptcy estate to their own liens. The Bankruptcy Court entered summary judgment for Appellees, holding that Appellants' cross-claims were barred by the doctrine of *res judicata*, due to an earlier judicially approved compromise between the Chapter 7 Trustee and Appellees.

Appellants argue on appeal that (1) the compromise explicitly reserved in them the right to bring their claims of equitable subordination against Appellees; (2) they were not parties to the compromise and therefore the consent judgment is not *res judicata* to them, and (3) Appellees waived the defense of *res judicata*. For the reasons set out below, this Court rejects each of these contentions and affirms the order of the Bankruptcy Court.

### I. *Background*

This controversy involves the proper distribution of the sale proceeds of the Debtor's real and personal property to the creditors of the Debtor. Appellees asserted liens in the sale proceeds and the Trustee disputed their interests. The Trustee and Appellees eventually agreed to a settlement and submitted a Joint Application for the Approval of Compromise to the Bankruptcy Court. As part of the compromise, the Trustee agreed to release "any and all" claims he had against Appellees, with one exception. The compromise provided that the "extent, priority, allowability and amount of the claims of the various creditors shall be subsequently determined in an action to be brought by the trustee." In exchange for the Trustee's release, Appellees agreed to a number of concessions, including the payment of $250,000 to the estate and the voluntarily subordination of all of their unsecured claims to the claims of the general creditors.

The Bankruptcy Court approved the compromise after notice and a hearing. Appellants Cara Corporation ("Cara") and Acme Engineering Company ("Acme"), creditors of the estate, were given notice of the hearing. Cara did not appear at the hearing and did not object to the compromise; Acme appeared and made an objection, seeking clarification that Appellees would be parties to the later action to determine priority of all claims. Acme contended that its mechanic's lien had priority over the liens of Appellees. The Bankruptcy Court overruled Acme's objection on the ground that the priority of all claims to the estate, including those of Appellees, would be determined in the later action. In approving

the Joint Application, the Bankruptcy Court made an explicit finding that the compromise was in the best interests of the estate and its creditors.

On September 24, 1987 the Trustee instituted the present action, in accordance with the terms of the compromise, to determine the nature, extent, validity, priority, amount and allowability of the various creditors' claims. Cara moved to add a third-party defendant on December 24, 1987, asserting a claim of equitable subordination against Appellees. Acme filed a cross-claim against Appellees on October 29, 1987, asserting equitable estoppel, and moved on June 30, 1988 to amend its cross-claim to include a claim of equitable subordination. Acme's motion to amend was granted in part by the Bankruptcy Court.

In April 1989 Appellees moved to dismiss Appellants' cross-claims on the ground that the claims were barred by *res judicata* and lack of standing. The Bankruptcy Court agreed that the cross-claims were barred by *res judicata* and granted Appellees' motion, treating it as one for summary judgment. Appellants appeal that order.

## II. *Discussion*

 Courts apply the doctrine of *res judicata* to bar parties (or their privies) who have received a final judgment from bringing further claims based on the same cause of action. *Montana v. United States*, 440 U.S. 147, 153, 99 S.Ct. 970, 973, 59 L.Ed.2d 210 (1979). This area of the law is fraught with profuse terminology which can obscure the underlying analysis, but the basic notion is straightforward: once two parties have litigated a claim and have obtained a final judgment, or have resolved an issue necessary to a final judgment, those parties are not permitted to relitigate the same claim or issue in a new proceeding. *Res judicata* promotes judicial economy by preventing needless litigation, protects litigants from the cost and vexation of multiple lawsuits, and encourages reliance on adjudication. *Allen v. McCurry*, 449 U.S. 90, 94, 101 S.Ct. 411, 414, 66 L.Ed.2d 308 (1980). The party against whom the earlier decision is asserted must have had a "full and fair opportunity to litigate the claim." *Kremer v. Chemical Construction Corp.*, 456 U.S. 461, 481 & n. 22, 102 S.Ct. 1883, 1898 & n. 22, 72 L.Ed.2d 262 (1982).

 As a general matter, consent orders or judgments are given the same *res judicata* effect as judgments in litigated cases. *Arrieta–Gimenez v. Arrieta–Negron*, 859 F.2d 1033, 1041 (1st Cir.1988); *In re Grenert*, 108 B.R. 1, 3 (D.Me.1989). The extent of the preclusive effect of consent judgments on later actions presents special problems due to their dual nature as contracts and judicial decrees. This Court has indicated that consent orders are entitled to greater dignity than mere contracts because the court must make a judicial determination that the agreement is fair. *In re: Grenert*, 108 B.R. at 4. The Court of Appeals for the First Circuit has adopted the Restatement view of *res judicata*, which uses a transactional approach to determine the extent of the "claim" extinguished when the doctrine applies. *Manego v. Orleans Board of Trade*, 773 F.2d 1, 5 (1st Cir.1985); Restatement (Second) Judgments § 24. This Court has held that the transactional approach is used to determine the preclusive effect of consent agreements. *See In re: Grenert*, 108 B.R. at 4.

 The Bankruptcy Court applied claim preclusion[1] to Appellants' cross-claims, holding that the judicially approved compromise barred Appellants from asserting equitable subordination against Appellees. The rule of bar is one of fairness to

---

**1.** Courts often use the broad term *res judicata* to describe two related concepts: claim preclusion and issue preclusion (collateral estoppel). Claim preclusion applies when a second suit is brought against the same party on the same claim. If the prior judgment is in favor of plaintiff, the claim or cause of action is said to "merge" in the judgment; if the prior judgment is in favor of defendant, plaintiff is "barred" from bringing another claim based on the same cause of action. *See* Restatement (Second) Judgments § 17.

Other courts use the term *res judicata* to refer strictly to claim preclusion, as distinguished from collateral estoppel (issue preclusion). *See e.g., Allen v. McCurry*, 449 U.S. at 93 n. 5, 101 S.Ct. at 415 n. 5. This Court will use the term *res judicata* to refer to claim preclusion.

the defendant, and may be imposed even though the substantive issues have not been tried, especially if the plaintiff has failed to avail himself of opportunities to pursue his remedies in the first proceeding. Restatement (Second) Judgments § 19, comment (a). The general rule of bar requires a plaintiff to correct errors in the underlying action through appeal, not through a second action on the same claim. *Id.*

■ Appellants' primary contention is that the compromise expressly contemplates their assertion of a claim of equitable subordination against Appellees. The compromise expressly releases "any and all" claims which the Trustee may have had against Appellees, with one exception: the compromise directs the Trustee to bring a later action to determine the "priority" of all claims to the estate. Appellants argue that the agreement's contemplation of a later suit to determine the priority of all claims includes their right to assert a claim of equitable subordination against Appellees.

In asserting this argument Appellants are, in essence, asking this Court to enforce the terms of the consent order. Consent orders are viewed in different ways in different contexts. *See Local No. 93 International Association of Firefighters v. City of Cleveland,* 478 U.S. 501, 519, 106 S.Ct. 3063, 3073, 92 L.Ed.2d 405 (1986). In an action for enforcement their contractual nature predominates. *United States v. ITT Continental Baking Co.,* 420 U.S. 223, 238, 95 S.Ct. 926, 935, 43 L.Ed.2d 148 (1975). This Court, therefore, must construe the terms of the consent order to determine what claim, or part of a claim, was reserved for future litigation. In con-

struing the consent order, the Court may rely on traditional aids to contract construction. *Id.*

Appellants apply an incorrect analysis in their construction of the Joint Application and Order of Approval, stressing the word "priority" in isolation from the entire compromise. The clause providing for a later suit to determine priority of claims must be read in the context of the agreement in which it is found. Reading the Joint Application as a whole, this Court holds that the agreement did not reserve in the Trustee (or parties in privity with the Trustee) the right to bring later claims of equitable subordination. The Joint Application indicates that the Trustee had investigated potential claims of preferential transfers, fraudulent transfers, and *equitable subordination* against Appellees, but concluded that it would not be in the best interest of the estate to bring those claims against Appellees.[2] The Trustee entered into the Joint Application, with precisely this evaluation in consideration, to avoid litigation of those claims. Under these circumstances it would be unreasonable to construe the future litigation clause as reserving in the Trustee or Appellants the right to reassert claims of equitable subordination against Appellees. This Court holds that the Joint Application and subsequent order of approval entered by the Bankruptcy Court reserved for future litigation only the issue of the *legal priority* of all the creditors' claims to the estate. The Trustee relinquished the claim of equitable subordination in the Joint Application; the Trustee, and parties in privity with him, are barred by the doctrine of *res judicata* from reasserting that claim against Appellees.[3]

**2.** The Joint Application contains an extensive introductory section, entitled "INVESTIGATION BY TRUSTEE RE: PREFERENTIAL AND FRAUDULENT TRANSFERS AND POTENTIAL EQUITABLE SUBORDINATION CLAIM," which details the Trustee's reasons for finding a claim of equitable subordination not to be in the best interests of the estate and creditors. The section concludes by stating that "costs of administration including attorneys and accountants fees to properly audit and then litigate issues of preferences, fraudulent transfers and *equitable subordination* of secured claims could be sub-

stantial...." (Emphasis added.) This language, found in the consent agreement itself, discredits Acme's contention that "there is no evidence that the Trustee actually intended to dispose of [creditors' equitable] claims." The Joint Application, by its own terms, indicates that the Trustee released any potential claims of equitable subordination which may have had against Appellees.

**3.** While this Court has held that the *res judicata* effect of a consent order is not determined *solely* by reference to the language of the order,

This Court's construction of the compromise finds support in the proceedings leading to its approval. The Bankruptcy Court discussed the meaning of the reservation clause at the hearing on the motion to approve the Joint Application. Acme had objected to the compromise, not on the basis of an equitable reshuffling of priorities, but on the ground that its mechanic's lien had legal priority over Appellees' secured claims. *See* Objection of Acme Engineering Company to Joint Application For Approval of Compromise, June 23, 1987. Acme was concerned that the compromise not be construed to conclusively establish that Appellees' liens had legal priority over its own liens; it sought assurance that Appellees would be parties in the later action to determine the priority of all claims to the bankruptcy estate. *Id.* Acme now concedes that absent an equitable reordering of priorities, its mechanic's lien is junior to those of Appellees because it neglected to name Appellees in the state court action to perfect the mechanic's lien. At the hearing Acme indicated that its objection was based on the fact that it had a "prior to, superior" secured claim to Appellants. *See* Transcript of Hearing on Joint Application for Approval of Compromise at 7. Acme gave no indication that it sought to obtain a superior position through an equitable reordering. Acme specifically asked the Bankruptcy Court to clarify the clause reserving for future litigation the relative priorities of all claimants to the property of the bankruptcy estate. Acme withdrew all objections to the compromise "to the extent that our superior position is to be determined at a later date." *Id.* The Bankruptcy Court ordered that Acme review the order approving the compromise such that "wording satisfactory to [Acme] is included in the form of order of allowing the compromise." *Id.* Nowhere in the Joint Application or the order approving the compromise is there an indication that the claim of equitable subordination was reserved for future litigation. This Court finds that the claim of equitable subordination was released by the Trustee, thus precluding Appellants from reasserting it in a new action.

■ Appellants also argue that they are not bound by the consent agreement because they were not parties to the agreement or the underlying litigation which it purported to settle. The *res judicata* doctrine, however, has historically been defined as precluding parties or their *privies* from relitigating the same claim. *See* Wright, Miller, and Cooper, 18 *Federal Practice and Procedure: Jurisdiction* § 4449. While the privity label is not in itself analytically useful, the basic concept is that one must look to the underlying reasons for holding a person bound by a judgment. *Crane v. Commissioner of Department of Agriculture*, 602 F.Supp. 280, 285 (D.Me.1985) ("The applicability of res judicata generally and preclusion by representation specifically 'must be determined as a matter of substance and not of mere form,' based in part on an identification of the interests advanced in the first proceeding.") A party will be held bound by a prior judgment if the party has been given a full and fair opportunity to litigate the claim. *See Kremer v. Chemical Construction Corp.*, 456 U.S. at 481, 102 S.Ct. at 1897. That opportunity exists when the party is represented in the prior proceeding by a party with the same interests. *See* Restatement (Second) Judgments § 41(1)(a).

■ Appellants were represented by the Trustee, who acted on behalf of all the creditors of the estate and who was the proper party to seek equitable subordination for the benefit of the estate and its creditors. *See In re Parker Montana Co.*, 47 B.R. 419, 421 (D.Mont.1985); 11 U.S.C. § 510(c).[4] The Trustee explicitly asserted

---

*In re Grenert,* 108 B.R. at 4, it is undisputed that reassertion of a claim is barred if the compromise and order directly addresses and disposes of that claim. In the compromise, the Trustee released "any and all claims" he may have had against the estate, with the exception of a later suit to determine priority of claims. That reservation does not reserve in the Trustee or Appellants a right to assert a claim of equitable subordination. Thus Appellants' cross-claims asserting equitable subordination were barred by the doctrine of *res judicata*.

**4.** 11 U.S.C. § 510(c) provides:

and relinquished the claim of equitable subordination in the Joint Application, which was approved by the Bankruptcy Court after notice and a hearing. Because their representative released any claim of equitable subordination he may have had against Appellees, Appellants are barred by *res judicata* from reasserting any such claim against Appellees.[5]

This Court recognizes that at times a secured creditor may have interests which conflict with those of the Trustee. The Restatement recognizes an exception to the rule of preclusion by representation when "there was such a substantial divergence of interest between [the representative] and the members of the class [represented], or a group within the class, that he could not fairly represent them with respect to the matters as to which the judgment is subsequently invoked." Restatement (Second) Judgments § 42(1)(d). In such an instance, however, the creditor is protected by being given an opportunity to object to the consent agreement. *See* Bankruptcy Rule 9019. Appellants were given an opportunity to object; Cara made no objection, and Acme's objection was expressly overruled by the Bankruptcy Court. Moreover, Acme's objection was not based upon a contention that it should be allowed to reorder the priority of claims against the estate on equitable grounds. The Bankruptcy Court considered the interests of the estate as a whole and made an explicit finding that the compromise was in the best interests of the estate and its creditors. *See In re: Medomak Canning,* No. 186–00126, *Order Approving Compromises,* August 20, 1987 ("both compromise[s] as they may be modified by this Order are in the best interest of creditors and the estate....."). Appellants had an opportunity to appeal the order of the Bankruptcy Judge under 28 U.S.C. § 158(c), but declined to do so. Under these circumstances the Trustee's action is *res judicata,* barring Appellants from bringing a cause of action for equitable subordination. *See In re: Dominelli,* 820 F.2d 313, 317–13 (9th Cir.1987).

In sum, this Court holds that the Bankruptcy Court correctly concluded that the Trustee released any claim he may have had against Appellees based on equitable subordination. The Trustee agreed to release "any and all claims" he had against Appellees, with the exception of an action to determine the priorities of the claims of all the creditors of the estate. The action reserved by the consent agreement does not allow the Trustee or Appellants to bring a claim of equitable subordination. The Order approving the Joint Application of Compromise is *res judicata* barring Appellants from reasserting a claim of equitable subordination against Appellees.[6]

Accordingly, it is *ORDERED* that the decision of the United States Bankruptcy Court for the District of Maine be, and it is hereby, *AFFIRMED.*

[A]fter notice and a hearing, the court may—
(1) under principles of equitable subordination, subordinate for purposes of distribution all or part of an allowed claim to all or part of another allowed claim or all or part of an allowed interest to all or part of another allowed interest; or
(2) order that any lien securing such a subordinated claim be transferred to the estate.

5. Appellants argue that the parties' intent to dispose of the issue of equitable subordination must have been clear in order to give rise to issue preclusion. That contention, and the cases cited in its support, is misguided because the Bankruptcy Court applied claim preclusion, not collateral estoppel (or issue preclusion).

6. Appellant Acme also argues that the affirmative defense of *res judicata* was waived because it was not timely raised as required by Fed.R. Civ.P. 8(c). The Bankruptcy Court ruled on the merits of the defense, and this Court holds that it did not abuse its discretion in so ruling.