In re CHECK REPORTING SERVICES, INC., Debtor.

James W. BOYD, Trustee, Plaintiff,

v.

NORTH END AUTO SALES, INC., Defendant.

James W. BOYD, Trustee, Plaintiff,

v.

EUGENE HEIKKILA INC., and/or Alice Heikkila Ind. and/or d/b/a North End Auto Sales, Inc., Defendants.

Bankruptcy No. SL–89–00270.
Nos. 91–8335, 91–8581.

United States Bankruptcy Court,
W.D. Michigan, S.D.

Feb. 20, 1992.

**654**

James W. Boyd, Traverse City, Mich., Trustee.

John T. Piggins, Day, Sawdey & Flaggert, Grand Rapids, Mich., for Trustee.

Joshua Teverow, Quinn, Shechtman & Teverow, Providence, R.I., for North End Auto.

## CONSOLIDATED OPINION AND ORDER GRANTING MOTIONS FOR RECONSIDERATION AND TO DISMISS

JO ANN C. STEVENSON, Bankruptcy Judge.

In this matter the court is called upon to determine what happens when the Trustee enters into a settlement agreement which is intended to resolve one adversary proceeding but has the effect of resolving two. Adversary Proceeding No. 91–8335 was commenced by Trustee James W. Boyd's ("Trustee") predecessor to recover an alleged preference of $9,551.93 from Defendant North End Auto Sales, Inc. ("North End"). Adversary Proceeding No. 91–8581 was commenced by the Trustee against North End and other defendants to collect an alleged overpayment made by Debtor in the approximate amount of $16,000. Through the hapless inadvertence of the Trustee's counsel, these proceedings became intertwined in the settlement of the preference action. Because the outcome of the two actions is controlled by the same set of facts and questions of law, the court on its own motion consolidates these two matters for the limited purpose of resolv-

ing the Trustee's Motion for Reconsideration of Order Denying Motion for Relief From Order in No. 91–8335 and North End's Motion to Dismiss in No. 91–8531. FED.R.BANKR.P. 7042; FED.R.CIV.P. 42(a).

In June, 1991 John Piggins, counsel for Trustee in the preference action, reached an agreement with attorney Joshua Teverow, who represented North End, to settle that case for $3,152.93. This agreement was put in writing by Mr. Teverow, who sent a letter to Mr. Piggins dated June 25, 1991 stating in pertinent part:

> I am writing to confirm that we have agreed to settle your claim.... By copy of this letter I am requesting that my client forward to me the appropriate check made payable to "Day, Sawdey & Flaggert, Attorneys for John R. Walhout, Trustee". We will then exchange the check and a General Release which you will be preparing, discharging my client from any liability to your client for this transaction *or any other transaction.*

Exhibit A to Trustee's Brief in Support of Motion for Reconsideration of Order Denying Motion for Relief from Order ("Trustee's Brief") (emphasis supplied). Trustee's counsel admits that he "did not focus on the last 4 words" of the paragraph of Mr. Teverow's letter quoted above. Trustee's Brief at 3.

In response, Mr. Piggins prepared the stipulated settlement agreement called for in Mr. Teverow's letter. That stipulated agreement provided that:

> Plaintiff John R. Walhout, Trustee for Check Reporting Services, Inc., hereby agrees to accept the amount referred to in Paragraph 1 in full satisfaction of any and all obligations owed to the Debtor by the Defendant as a result of Defendant's receipt of preferential transfers from Check Reporting Services, Inc.

Exhibit B to Trustee's Brief at 2–3. Mr. Piggins signed the document and mailed it to Mr. Teverow. Mr. Teverow signed the document as well, but not before drawing a line through the words, "as a result of the Defendant's receipt of preferential transfers from Check Reporting Services, Inc."

This changed the document from a limited to a general release. Mr. Teverow initialed the change and sent the stipulated agreement and a check for the settlement amount back to Mr. Piggins, accompanied by a letter which drew attention to, and made explicit the intent of this change:

> Please note that we have accepted this arrangement *contingent upon* your acceptance of the omitted language I crossed out on the Settlement Agreement. I simply feel that this settlement should resolve all potential disputes between our clients.

Exhibit B to Trustee's Brief at 1 (emphasis in original). Mr. Piggins' visual impairment apparently had not yet been resolved; "Plaintiff's attorney did not focus on the cover letter or the fact that language in the Settlement Agreement had been changed." Trustee's Brief at 3. Mr. Piggins submitted the stipulated settlement agreement to the court for approval without requesting a hearing pursuant to FED.R.BANKR.P. 9019, under the assumption that the settlement was one for which the notice and hearing requirements were waived by the court under FED.R.BANKR.P. 9019(b). The court approved the settlement on July 29, 1991.

At some point Mr. Piggins' visual acuity improved markedly in regard to the release language of the stipulated settlement agreement, prompting him to file a Motion For Relief from Order in the preference matter on October 23, 1991. North End filed a response to the motion and in addition filed a motion to dismiss the overpayment case based upon the release. The latter motion has been held in abeyance pending the resolution of the issues in the preference case.

The Trustee's initial motion for relief from the stipulated settlement agreement was unaccompanied by any statement of either the legal issues or the authority supporting his prayer for relief. The court therefore denied the motion in an order dated November 13, 1991, having communicated to both attorneys that if Mr. Piggins felt that there was some authority for the court to reach a different result, he should so state in a brief to accompany his expected motion for reconsideration.

The Trustee's Motion for Reconsideration of Order Denying Relief from Order was filed on December 13, 1991, and a supporting brief followed on December 31, 1991. In his brief the Trustee argued that the order approving the settlement must be set aside because it was entered without proper notice to creditors under FED. R.BANKR.P. 9019; that the settlement agreement should be "reconsidered in light of its equities" (Trustee's Brief at 9); and that the settlement was not a valid binding contract. The court did not require North End to file a response.

On January 30, 1992 a telephone status conference was held between the court, Mr. Piggins and Mr. Teverow. At that time the court indicated its reluctance to set aside the settlement agreement, explaining that, under Michigan law, absent facts indicating fraud, artifice, or deception, the failure to read a contract does not require rescission. *Moffit v. Sederlund*, 145 Mich.App. 1, 8, 378 N.W.2d 491 (1985) *lv. den.* 425 Mich. 860 (1986). On January 31, 1992 a letter from Mr. Piggins was hand-delivered to the court in which Mr. Piggins stated:

> We believe your decision regarding the state law issue of contract rescission is correct under Michigan law. Our mistake does not justify rescission of this settlement under Michigan law. However, failure to provide notice of this settlement and opportunity for a hearing renders the settlement void as a matter of bankruptcy law and due-process principles, regardless of whether the "settlement contract" can be rescinded under state law. Therefore, the settlement is void and should be set aside.

January 31, 1992 letter at 2. The court interprets this statement as a withdrawal of the argument previously advanced by the Trustee that the settlement agreement was not a valid, enforceable contract under Michigan law.

### I. Jurisdictional issues.

Jurisdiction exists in these matters under 28 U.S.C. § 1334(b), the preference matter

being a core proceeding under 28 U.S.C. § 157(b)(2)(F). The overpayment proceeding is a non-core proceeding under 28 U.S.C. § 157(c)(1). The Trustee has consented to the rendering of final orders in the latter case. As North End has not objected to the entry of final orders, and in view of the fact that the dismissal which it requested is being granted, its consent is implied. This court may therefore render final orders in both proceedings pursuant to 28 U.S.C. § 158(a).

## II. The preference action.

The Trustee has cited several cases in which the court ruled that a settlement agreement was void for lack of notice to creditors and was therefore set aside. *See, e.g.,* In re *Lloyd, Carr & Co.,* 617 F.2d 882 (1st Cir.1980); *Zerodec Mega Corp. v. Terstep of Texas, Inc.,* 47 B.R. 304 (Bankr. E.D.Pa.1985). However, in none of these cases was there an order which allowed for the settlement of cases pursuant to FED. R.BANKR.P. 9019(b).

 FED.R.BANKR.P. 9019, **Compromise and Arbitration,** governs compromises to which the trustee is a party:

> **(a) Compromise.** On motion by the trustee and after a hearing on notice to creditors, the United States trustee the debtor and indenture trustees as provided in Rule 2002 and to such other entities as the court may designate, the court may approve a compromise or settlement.
>
> **(b) Authority to Compromise or Settle Controversies Within Classes.** After a hearing on such notice as the court may direct, the court may fix a class or classes of controversies and authorize the trustee to compromise or settle controversies within such class or classes without further hearing or notice.

The bankruptcy rules as a whole are procedural, not jurisdictional, in nature. *Bostick Foundry Co. v. Lindberg, A Division of Sola Basic Industries, Inc.,* 797 F.2d 280, 283 (6th Cir.1986) *cert. den.* 479 U.S. 1066, 107 S.Ct. 953, 93 L.Ed.2d 1002 (1987). This holds true for FED.R.BANKR.P. 9019 as well.

*Id.* As the court views it, the issue in the preference action is not whether the settlement in question was void as a result of total noncompliance with the notice and hearing procedure, but whether the settlement agreement fell within the letter of an exception created by the court pursuant to FED.R.BANKR.P. 9019(b).

This court has previously authorized settlement of several classes of claims in this chapter 11 pursuant to FED.R.BANKR.P. 9019(b). Such a class was created in the July 15, 1991 order prepared by Mr. Piggins setting forth the following procedure:

> Without further hearing or notice, John R. Walhout, as Trustee of Check Reporting Services, Inc., or any succeeding Chapter 7 Trustee, may settle any of the pending preferential transfer adversary proceedings in this matter for no less than twenty-five percent (25%) of the amount of the judgment requested by the Trustee in the proceeding which is settled.

There appears to be no dispute that the settlement proposed in this action would be within the scope of the July 15, 1991 order if it pertained only to the settlement of the preference action. However, the Trustee has argued that the overpayment action could not be settled without notice because it also included the settlement of the overpayment claim. Therefore, he claims, the settlement agreement was void as being beyond the scope of his authority.

The Trustee's protestations to the contrary, this settlement agreement is within the scope of the court's July 15, 1991 order. That order poses a simple mathematical test: the amount being paid by the creditor must be at least 25% of the amount sued for in the "proceeding which is settled." The amount paid by North End, $3,152.93, was 33% of $9,551.93, the amount sued for in the "proceeding which is settled."

The settlement order in the preference case did not provide for the settlement of overpayment action. Indeed, that action had not even been commenced at the time

the order was entered.[1] Consequently, the order did not bear the caption of that proceeding, nor was it signed by or served upon the attorney of record for the Trustee in that case, James D. Schramm. Absent Mr. Piggins' admission in his January 31, 1992 letter, it is conceivable that a defense might have existed as to the release of that claim which the Trustee may have asserted, such as fraud, mutual mistake, or unconscionability. But the assertion of those defenses is a matter to be taken up in connection with North End's motion to dismiss, not in the approval of this settlement. Accordingly, the court finds that as the settlement agreement was within the scope of the July 15, 1991 order, no notice of the settlement to creditors was required.

### III. The overpayment action.

We now turn to the motion to dismiss filed by North End in case no. 91–8581. This is more appropriately characterized as a motion for summary judgment under FED.R.BANKR.P. 7056; FED.R.CIV.P. 56(b), and the court will treat it as such. The basis for the relief requested is the release contained in the settlement agreement.

■ Consent orders entered by the court pursuant to a stipulation by the parties have a dual nature as both judicial decrees and contractual obligations. *Bezanson v. Bayside Enterprises*, 111 B.R. 371, 374 (D.Me.1990). The contractual nature of such agreements predominates in their enforcement. *Id.* This principle was applied in *Sweeney v. Walter E. Heller & Co.*, 102 B.R. 609 (Bankr.W.D.Mich.1989).

In *Sweeney* an action was commenced during chapter 11 involving the disposition of account receivable proceeds against which the IRS, the State of Michigan, and a secured creditor claimed liens. The case converted to chapter 7, and later the parties reached a settlement agreement. The settlement approved by the court provided, among other things, that the estate would pay the IRS $20,000. An order implementing the settlement was subsequently en-

tered pursuant to which the settlement proceeds were paid to the IRS.

Some time later it was learned that there were insufficient moneys in the estate to pay all of the chapter 7 and 11 administrative expenses. The trustee therefore attempted to set aside the settlement agreement in order to return the $20,000 back to the estate so that the claim of the IRS could be paid in order of its priority.

This relief was denied by Judge Nims. Noting that the settlement agreement was governed by contract principles, he concluded that an otherwise valid settlement agreement may therefore be set aside only if there is a basis for vitiating the agreement under contract law. Those grounds are mutual mistake of fact, fraud, or unconscionability. *Id.* at 611. In *Sweeney*, only the unilateral mistake of the trustee was present:

> Apparently, the trustee erred in allowing the settlement to be approved before making his final accounting. Essentially, the trustee is trying to appeal the settlement agreement. However, the time for appeal expired long before the trustee's present motion was filed. As a result, the settlement agreement is a valid contract and will not be set aside.

*Id.* at 612.

The circumstances are no different in this case. The Trustee admits that the change made to the settlement agreement had the effect of "making the Settlement Agreement all-inclusive." Trustee's Motion for Reconsideration of Order Denying Relief from Order at ¶ 12. Mr. Piggins admitted in his letter of January 31, 1992 that under state law there was no basis for relief from the contract entered into as a result of his unilateral mistake. Accordingly, the contractual release is binding and will be enforced by this court.

### IV. Claims of the Trustee against Mr. Piggins.

■ The remaining issue is whether the estate should bear the consequences of this inadvertent release. The Trustee al-

---

1. The settlement order was entered on July 29, 1991. The overpayment suit was filed on September 9, 1991.

leges in his brief that North End had few if any defenses to the overpayment action. Trustee's Brief at 10. He also alleges that the relief requested must be granted in order to prevent an inequitable result, stating that the court "has the duty to review the merits of the Settlement Agreement to ensure that the compromise is fair and equitable." Trustee's Brief at 9. The court agrees that it has a duty to determine whether settlements with the trustee are reasonable before approving them. However, in discharging this duty the court need not make an independent review of the entire merits of the action being settled. In appropriate instances it is reasonable for the court to place a certain amount of reliance upon the trustee. As stated by the court in *Official Committee of Unsecured Creditors v. James Talcott, Inc.*, 103 B.R. 420, 422–23 (S.D.N.Y.1989):

> [A] court need not conduct an independent investigation in formulating its opinion as to the reasonableness of a settlement. A court may give weight to the Trustee's informed judgment that a compromise is fair and equitable, [citation omitted], and consider the competency and experience of counsel who support the compromise, [citation omitted].

This statement applies with even greater force where, as here, the Trustee has invited greater reliance by the court than is usual by requesting an order dispensing with the notice and hearing requirements. The only investigation the court could have made into the merits of this settlement that would have revealed the Trustee's error would have been a hearing on the settlement, since at the time the settlement was approved, July 29, 1991, the overpayment suit had not even been commenced. At the time the settlement agreement was presented, a review of the entire court record would have revealed nothing untoward. Under these circumstances, the court quite reasonably relied on the Trustee and Mr. Piggins to ensure that the compromise was "fair and equitable."

The Trustee's appeal to equity is in fact an attempt to shift the responsibility for Mr. Piggins' error to North End or to the court. Neither equity nor this court will aid such an endeavor. One of the prerequisites to the exercise of equitable powers to set aside a mistake of a party is that the mistake not be the result of the negligence of that party amounting to the violation of a positive legal duty. JOHN N. POMEROY & SPENCER W. SYMONS, 3 EQUITY JURISPRUDENCE § 856b (5th ed.1941). As counsel for the Trustee Mr. Piggins clearly had a legal duty to read the settlement documents provided to him on three separate occasions, each of which drew attention to North End's insistence that all claims, not just preference claims, be released. He admits that he was aware of the overpayment claim at the time the settlement was approved. Trustee's Brief at 8. By his own admission counsel did not discharge his duty. While Mr. Piggins is to be commended on his willingness to admit his mistake, the responsibility for the consequences of that mistake also rest with him. In this opinion the court affirms that this burden will not be shifted to North End. And, it is the Trustee's responsibility to ensure that this burden is not shifted to the estate. Accordingly,

IT IS HEREBY ORDERED that the Trustee's motion for reconsideration of the order approving settlement in adversary proceeding no. 91–8335 is granted and upon reconsideration the order is affirmed;

IT IS FURTHER ORDERED that North End's motion to dismiss adversary proceeding no. 91–8581 be and hereby is granted;

IT IS FURTHER ORDERED that Mr. Piggins and the Trustee shall appear before the court at a status conference to be held in Lansing, Michigan on March 18, 1992 at 11:00 a.m., at which time they shall be prepared to inform the court what further action will be taken by the estate against Mr. Piggins to ensure that restitution to the estate is made for any loss occasioned to it by Mr. Piggins' oversight.